**DOW CHEMICAL CO., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 83–4–00634.**

United States Court of International Trade.

Aug. 19, 1986.

---

Barnes, Richardson & Colburn, Robert E. Burke, Thomas M. Keating, Lynn S. Baker, Chicago, Ill., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Civ. Div., Dept. of Justice, Saul Davis, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

Plaintiff challenges the United States Customs Service (Customs) classification of pyrolysis gasoline imported from Spain (merchandise).

The merchandise was entered in May, 1980 and classified under item 403.90, Tariff Schedules of the United States (TSUS), as a mixture in part of products provided for in Schedule 4, Part 1, Subpart B, covering TSUS items 403.02 through 403.90. Plaintiff seeks classification in Schedule 4, Part 1, Subpart A under item 401.44, TSUS, as "light oil," or under item 401.80, TSUS, as a mixture of Subpart A products, or, alternatively, in Schedule 4, Part 10 under item 475.35, TSUS, as naphtha, or under item 475.65, TSUS, as a mixture of hydrocarbons not specially provided for. Plaintiff also says that classification under item 475.35, TSUS is required by an established

and uniform practice under 19 U.S.C. § 1315(d) (1982) or by a uniform practice under 19 C.F.R. § 177.10(b) (1985).

The Court holds that the merchandise is properly classified under item 403.90, TSUS.

I. Plaintiff's Claimed Classifications Under Schedule 4, Part 1, Subpart A

Plaintiff proposes two alternative classifications under Schedule 4, Part 1, Subpart A, providing as follows:

Coal tar, crude (including crude blast-furnace tar, crude oil-gas tar, and crude water-gas tar), and organic chemical products found naturally in coal tar, whether produced or obtained from coal tar or other source [emphasis added]:

. . . .

401.44 Light oil ......................... Free

. . . .

401.80 Mixtures consisting wholly of two or more of the foregoing named products ....... Free

The proposed classifications raise the questions (1) whether item 401.44, TSUS is an *eo nomine* provision covering light oil which contains products not found naturally in coal tar, and (2) whether item 401.80, TSUS, covering mixtures "wholly of" products named in Schedule 4, Part 1, Subpart A, applies to merchandise consisting in part of products not listed in Subpart A.

■ The Court finds that the following products have not been shown to be found naturally in coal tar light oil: styrene, ethylbenzene, alkylbenzenes other than toluene and xylene, cyclopentadeine, piperylene, isoprene and pentene. These products comprise over 12% of the merchandise by weight. Plaintiff argues that item 401.44, TSUS is an *eo nomine* provision for light oil, contending that the superior heading to Subpart A should "be interpretated as *expanding* the scope of the subpart to include ... sources of the products set forth therein beyond those chemical products found naturally in coal tar." Reply Brief for Plaintiff at 10 (emphasis in original). The Court does not agree.

General Interpretative Rule 10(c)(i), TSUS, reads:

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following considerations shall govern:

(i) a superior heading cannot be enlarged by inferior headings indented under it but can be limited thereby

Applying this rule, an article is classifiable under item 401.44, TSUS only if it meets all the requirements of the superior heading. *See United States v. The Carborundum Co.*, 63 CCPA 98, 100–101, C.A.D. 1172, 536 F.2d 373, 376–77 (Fed.Cir.1976). A product is classifiable as "light oil" under item 401.44 only if it is light oil "found naturally in coal tar, whether produced or obtained from coal tar or other source." If Congress intended to give the "light oil" provision unlimited *eo nomine* scope, Congress would have provided for it without any limiting superior heading.

The Court holds that the merchandise is not classifiable as "light oil" within item 401.44, TSUS, since it contains products not "found naturally in coal tar" within the meaning of the superior heading.

■ Moreover, plaintiff failed to establish that the merchandise comes within the commercial meaning of "light oil." Nothing in the record shows the term "light oil" applied to the merchandise except one article written by plaintiff's expert witness. The same witness testified that the term "light oil" does not cover products derived other than by distillation, which he defined as "the heating up of a material such that the more volatile components vaporize and are separated from the heavier materials." (R. 525–26). The witness stated that distillation normally does *not* involve chemical and molecular changes in either the feedstock or the final product. *Id.* The parties stipulated, however, that the pyrolysis process, through which the merchandise was obtained, involved significant changes in the molecular structure of the feedstock and the final product. *See* Pretrial Order, Schedule C I.

Further, if the tariff provision for "light oil" were interpreted to encompass any hydrocarbon mixture that possesses a boiling range of up to 210–220°C, as plaintiff also argues, the provision would cover virtually all naphthas and motor fuels and many kerosenes. That interpretation would render items 475.25 475.35, TSUS superfluous and result in a partial nullification of item 475.30, TSUS. It is axiomatic that "Congress is presumed not to have used superfluous words in a statute." *Ameliotex, Inc. v. United States*, 65 CCPA 22, 25, C.A.D. 1200, 565 F.2d 674, 677 (Fed.Cir. 1977).

■ Plaintiff's claim under item 401.80, TSUS also fails. Item 401.80, TSUS provides for:

Mixtures consisting wholly of two or more of the foregoing products [those provided for in Subpart A].

General Headnote 9(f)(ii), TSUS defines "wholly of" as follows:

"wholly of" means that the article is, except for negligible or insignificant quantities of some other material or materials, composed completely of the named material.

Plaintiff's Exhibit 2 shows that the merchandise consists of 62.5% Subpart A compounds and 37.5% non-Subpart A compounds. The non-Subpart A compounds are present in sufficient quantity so that the merchandise cannot be said to be composed completely wholly of Subpart A materials within the meaning of General Headnote 9(f)(ii).

## II. Plaintiff's Claimed Classifications Under Schedule 4, Part 10

Plaintiff claims that the merchandise is classifiable in Schedule 4, Part 10, under item 475.35, TSUS, as naphtha, or alternatively under item 475.65, TSUS, as a mixture of hydrocarbons not specially provided for. The merchandise is described by the term "naphtha" under item 475.35, TSUS, and is classifiable under that provision unless it is also described under Schedule 4, Part 1, and classifiable thereunder by oper-

ation of headnote 1 to Schedule 4, Part 10, which states:

Any product described in this part and also in part 1 of this schedule is classifiable in said part 1, except fuel oils, motor fuel, and lubricating oils and greases, containing by weight not over 25 percent of any product described in said part 1.

The questions to be decided are (1) whether headnote 1 applies to products containing benzenoids which are not "added," but are created during synthesis of the petroleum feedstock, and (2) whether the merchandise is described in part 1.

The *Tariff Classification Study* states that "products described in part 10 would be classified in part 1 if they contained any '*benzenoid*' *additives*." 6 *Tariff Classification Study*, 167 (1960) (emphasis added). Since it has been stipulated that the benzenoids were created during the cracking process and were not added to the merchandise, plaintiff argues that headnote 1 to Part 10 does not require classification of its merchandise in Part 1 if it is described under that part.

■ The Court does not agree that the *Tariff Classification Study* requires that benzenoid compounds be "additives" to be described within Part 1, and governed by headnote 1 to Part 10. Headnote 1 to Part 1 states that unless there is a conflicting headnote elsewhere in Schedule 4, "all products described in this Part shall be classified hereunder even if more specifically described elsewhere in this schedule." Headnote 1 to Subpart B of Part 1 states that Schedule B applies to "products having a benzenoid, quinoid, or modified benzenoid structure artificially produced by synthesis...."

Since the headnotes, taken together, show that benzenoids produced by synthesis are classifiable in Part 1, Subpart B, products containing benzenoids produced by synthesis are classified in Part 1, rather than Part 10. Where the language of a statute is clear, an allegation of ambiguity will not transform the statute into an ambiguous provision. *See United States v. James*, — U.S. —, —, 106 S.Ct. 3116,

3121–23, 92 L.Ed.2d 483 (1986); *Amoco Oil Co. v. United States*, 749 F.2d 1576, 1579 (Fed.Cir.1984).

The Court must now decide whether the merchandise is "described ... in Part 1" within headnote 1 to Part 10. The merchandise was classified in Part 1, Subpart B, under item 403.90, TSUS, which covers:

Cyclic organic chemical products in any physical form a benzenoid, quinoid, or modified benzenoid structure, not provided for in subpart A or C of this part:

403.90 Mixtures in whole or in part of any of the products provided for in this subpart ... 1.7¢ per lb. + 12.5% ad val.

Plaintiff argues that item 403.90 does not encompass synthesized mixtures since the *Tariff Classification Study*, Schedule 4, at 21, says that item 403.90, TSUS was "based on" Paragraphs 27(a)(4) and 27(b) of the Tariff Act of 1930, and Paragraph 27(a)(5) says that these products cannot be synthetic. As stated above, headnote 1 to Subpart B says that products are described in items 403.02 through 403.-60 if they are derived by synthesis. Since item 403.90, TSUS by its terms covers mixtures of the products provided for in TSUS items 403.02 through 403.60, the Court will not look behind the plain meaning of statute. The Court holds that item 403.90 includes products produced by synthesis.

Plaintiff also disputes that the merchandise is a mixture "in part of any of the products provided for in" Subpart B and classifiable under item 403.90, TSUS, since these products "are not commercially recoverable from the mixtures themselves." Reply Brief for Plaintiff at 35.

General Headnote 9(f)(iv) states that " 'in part of' ... mean[s] that the article contains a significant quantity of the named material." Whether the Subpart B compounds make up a significant quantity of the merchandise depends upon whether the compounds exist in a quantity sufficient to perform a useful function or part of the primary function of the merchandise. *See Northam Warren Corp. v. United States*, 60 CCPA 117, C.A.D. 1092, 475 F.2d 647 (Fed.Cir.1973); *United States v. Cavalier*

*Shipping Co.*, 60 CCPA 152, C.A.D. 1103, 478 F.2d 1256 (Fed.Cir.1973).

The principal compounds present in the merchandise are benzene (32.5%), toluene (18.2%), and xylenes (7%). The toluene and xylenes were converted into benzene. The following Subpart B compounds are also present in the merchandise: ethylbenzene, vinyl toluene, styrene, alkylbenzenes, and alpha methyl styrene. Pretrial Order, Schedule C.I.L. Two laboratory analyses submitted by the parties disclose that these Subpart B compounds comprise either 13.34% or 15.5% of the merchandise by weight. Pretrial Order, Schedule C I., L., M.

Plaintiff sought to obtain from the merchandise as much benzene as possible. The toluene and xylenes were converted into benzenes and Subpart B compounds were also used for that purpose. Ethylbenzene and some alkylbenzenes were processed into benzene. Styrene was processed into ethylbenzene, then into benzene and fuel gases. The Court finds that these compounds are used to recover benzene, and that they have the same function as the bulk of the merchandise.

Vinyl toluene, a subpart B compound contained in the merchandise, was not used to obtain benzene. However, it was processed to become resin oil, which plaintiff offered for sale. Pretrial Order, Schedule C I., O(4), (12). The Court finds that vinyl toluene performed a significant and useful function.

Plaintiff argues without authority that each Subpart B product must be measured separately to determine if each separate product is present in commercially significant amounts. The Court disagrees and holds that the merchandise may be deemed a mixture "in part of" the products set forth in Subpart B if the products, taken cumulatively, satisfy the rule set forth in General Headnote 9(f)(iv).

In conclusion, the Court finds that the Subpart B compounds, comprising from 13.3% to 15.5% of the imported merchandise, are "present in a quantity sufficient to perform a useful function," *Northam*

*Warren Corp.,* 60 CCPA at 120, 475 F.2d at 650, or "are present in sufficient quantity to perform a part in the primary function of the article," *United States v. Cavalier Shipping Co.,* 60 CCPA at 156, 478 F.2d at 1259. The Court holds that the merchandise is a mixture that is "in part" of the products provided for in Subpart B. As such, it is classifiable in item 403.90, TSUS, and headnote 1 to Part 1 and headnote 1 to Part 10 preclude classification under TSUS items 475.35 or 475.65.

### III. Plaintiff's Claim That Customs Practices Require Classification Under Item 475.35, TSUS

Plaintiff says that even assuming that the merchandise is described by item 403.-90, TSUS, it should nevertheless be classified under item 475.35, TSUS since Customs had an established and uniform practice of classifying the merchandise under that provision. Section 315(d) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1315(d) (1982) provides in part:

> No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling. . . .

Plaintiff learned through the discovery process of facts which it contends show that at the time of entry only petroleum products containing benzenoids which were physically added were classified under Part 1 of Schedule 4 rather than under Part 10. According to plaintiff, since Customs disregarded this established and uniform practice when it classified the merchandise under Part 1, and no notice of a change in practice was published in the *Federal Register,* Customs classification is erroneous.

Defendant asserts that the Court may not consider plaintiff's arguments regarding an established and uniform practice because it lacks jurisdiction to do so. Defendant says that in order for plaintiff to claim classification based upon an established and uniform practice, it must have raised the alleged practice in its protest and cannot do so now. The Court disagrees.

New grounds may be raised in actions, brought before the Court under 28 U.S.C. § 2638 (1982) which provides:

> In any action under section 515 of the Tariff Act of 1930 in which the denial, in whole or in part, of a protest is a precondition to the commencement of a civil action in the Court of International Trade, the Court by rule may consider any new ground in support of the civil action so long as the new ground—
>
> (1) applies to the same merchandise that was the subject of the protest; and
>
> (2) is related to the same administrative decision listed in section 514 of the Tariff Act of 1930 [19 U.S.C. § 1514] that was contested in the protest.

■ The established and uniform practice claim relates to the same merchandise that was the subject of the protest. This new ground is also "related to the same administrative decision" under section 1514 that was contested in plaintiff's protest, since the protest challenged the classification of the merchandise under section 1514(a)(2), and the merchandise would be classified differently if the claimed established and uniform practice is found to exist.

The Court finds without merit defendant's argument that an established and uniform practice "only tangentially effects [sic] the classification and rate of duty," brief for defendant at 43, and relates solely to the liquidation of the merchandise—a matter listed in 19 U.S.C. § 1514(a)(5). Its argument is based on cases discussing whether merchandise was properly or improperly liquidated in accordance with established and uniform practices. *See Rank Precision Instruments, Inc. v. United States,* 68 CCPA 78, C.A.D. 1269, 660 F.2d

476 (Fed.Cir.1981); *Asiatic Petroleum Corp. v. United States*, 59 CCPA 20, C.A.D. 1029, 449 F.2d 1309 (Fed.Cir.1971).

Aside from the fact that these cases have nothing to do with raising new grounds under section 2638, each contains ample language demonstrating the relationship between established and uniform practices and the classification of merchandise. Any relationship between the established and uniform practice and the liquidation of the merchandise presents no barrier to plaintiff's raising the new ground under section 2638 provided the new ground is related to the decision under section 1514 which is challenged in the protest. In *Pagoda Trading Co. v. United States*, 9 CIT ——, 617 F.Supp. 96 (1985) *appeal docketed,* No. 86–750 (Fed.Cir. Dec. 18, 1985), the Court held that a claim that merchandise was deemed liquidated by operation of law related to the classification, appraisement and liquidation of the merchandise—three separate decisions under 19 U.S.C. § 1514(a):

> The fact that plaintiff's new ground for protest also falls within category (3) of § 1514(a), as a challenge to the validity of the February 26, 1982, liquidation is not dispositive. The essential fact is that the new "ground" relates to the original protest of the classification and appraisement decisions.

617 F.Supp. at 98.

In this case, the fact that the new ground relates to the liquidation does not bar its consideration since the claimed established and uniform practice relates to the classification decision. *See* 19 U.S.C. § 1514(a)(2).

Defendant's argument also fails to acknowledge that plaintiff did challenge the liquidation decision when it protested the classification of its merchandise:

> all decisions of the collector involved in the ascertaining and fixing the rate and amount of duties chargeable against imported merchandise entered for consumption are merged in and become a part of a legal liquidation, and it is a legal liquidation only ... against which a protest will lie.

*Dart Export Corp. v. United States*, 43 CCPA 64, 73, C.A.D. 610 (1956), *cert. denied*, 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 48 (1956) (quoting *United States v. B. Holman Inc.*, 29 CCPA 3, 14, C.A.D. 164 (1941)). Since a classification decision is merged in and becomes a part of a liquidation, an importer protesting classification of merchandise thereby protests the liquidation.

The Court also does not find that any limitation is placed on the jurisdiction of the Court by the holding in *Silvine Industries, Inc. v. United States*, 59 Cust.Ct. 355, C.D. 3168 (1967). In that case, decided when the protest served as the importer's pleading in the Customs Court, plaintiff had failed to plead "in its protests or by amendment" an alleged change in an established and uniform practice. *Id.* at 357. Without discussing 28 U.S.C. § 2642 (1964) (repealed 1970), a predecessor to section 2638 which gave the Customs Court discretion whether to allow amendments to protests, the Court held that the failure to plead or amend placed the claim beyond the scope of judicial review.

Other cases cited by defendant are inapposite. In *Audiovox Corp. v. United States*, 764 F.2d 848 (Fed.Cir.1985), *aff'g* 8 CIT 233, 598 F.Supp. 387 (1984), plaintiff's first protests did not request duty-free treatment under the Generalized System of Preferences (GSP), and plaintiff filed new protests contesting the refusal to grant GSP treatment. Since plaintiff filed a second protest rather than an action challenging denial of the first protests, the Court lacked jurisdiction over plaintiff's claim. *Computime, Inc. v. United States*, 772 F.2d 874 (Fed.Cir.1985), *aff'g* 8 CIT 259, 601 F.Supp. 1029 (1984), involved entries of watches and watches which were classified under separate provisions. Plaintiff's protest contesting the classification of the watches was granted by Customs. After reliquidation plaintiff filed a second protest contesting the classification of the watch bands. The Court held the second protest invalid since an importer cannot reserve for

later protest a separate aspect of the same entry.

None of the authorities cited by defendant hold that a plaintiff may not raise under section 2638 the existence of an established and uniform practice concerning the merchandise that is the subject of its protest. The Court holds that under section 2638 it may consider plaintiff's argument that an established and uniform practice requires classification of the merchandise under item 475.34, TSUS.

Plaintiff argues that an established and uniform practice required that benzenoid products must be physically added to require classification in Part 1 rather than in Part 10. Plaintiff first says there was a finding by the Secretary of the Treasury (Secretary) under section 1315(d) that an established and uniform practice existed by virtue of several memoranda written by a National Import Specialist in New York. The National Import Specialist is responsible for advising Customs officials throughout the country on the classification of naphthas.

■ No court has held, and plaintiff presents no authority, that a National Import Specialist was authorized to make findings on behalf of the Secretary. *Compare Washington Handle Co. v. United States*, 34 CCPA 80, 87, C.A.D. 346 (1946) (collectors at two Seattle ports unauthorized to making section 1315(d) findings), with *Asiatic Petroleum Corp. v. United States*, 59 CCPA 20, 449 F.2d 1309 (Fed. Cir.1971) (Acting Commissioner of Customs authorized), and *Rank Precision Industries, Inc. v. United States*, 68 Cust.Ct. 78, C.A.D. 1269, 660 F.2d 476 (Fed.Cir.1981) (Director, Classification and Value Division authorized). The National Import Specialist testified that statements and recommendations of National Import Specialists are not binding on Customs Headquarters, nor on other ports throughout the nation. The Court holds that the National Import Specialist did not have authority to make a finding on behalf of the Secretary under section 1315(d).

Plaintiff also argues that an established and uniform practice exists by virtue of C.S.D. 79–476, a ruling by the Director of the Classification and Value Division published in the Customs Bulletin. That ruling revoked an earlier ruling, C.S.D. 79–119, which concerned a product called VM & P naphtha, consisting of 48.5% paraffins, 41.7% naphthas, and a total of 9.8% aromatics. The earlier ruling held that VM & P naphtha containing a significant amount of benzenoid components could not be classified in Part 10 of Schedule 4 due to the wording of Headnote 1 to Part 10. In C.S.D. 79–476, however, Customs held that VM & P naphtha, which contains incidentally synthesized benzenoid compounds in relatively small percentages, could be classified separately from petroleum naphthas to which synthesized petroleum naphthas have been added. The ruling stated:

*The petroleum naphtha described herein,* not containing any added synthetic benzenoid components, is classifiable as petroleum naphtha in item 475.35, TSUS [emphasis added].

Defendant says that the merchandise in this case is not identical to VM & P naphtha, and therefore C.S.D. 79–476 has no application to the merchandise. The National Import Specialist testified that the ruling covered only so-called "straight-run naphthas" not produced by synthesis, and therefore did not cover the merchandise.

Plaintiff argues that regardless whether C.S.D. 79–476 involved straight-run naphthas as opposed to pyrolyzed naphthas, the Customs ruling applies to "the classification of all naphthas containing benzenoids and no distinction is made with respect to the methods of their production." Reply Brief for Plaintiff at 46. The Court disagrees.

■ A finding constituting an established and uniform practice is applicable only where it clearly describes the subject merchandise. *Rank Precision Industries, Inc. v. United States*, 68 CCPA 78, 83, C.A.D. 1269, 660 F.2d 476, 480 (Fed.Cir. 1981). Merchandise will not be classified in accordance with an established and uni-

form practice if plaintiff fails to prove that its merchandise is identical to that covered by a finding under section 1315(d). *Ditbro Pearl Co. v. United States*, 62 CCPA 95, 99, C.A.D. 1152, 515 F.2d 1157, 1161 (Fed. Cir.1975) (Miller, J., concurring).

 Since plaintiff has failed to prove that its merchandise is the same as the VM & P naphtha discussed in C.S.D. 79–476, that Customs ruling does not constitute a finding under section 1315(d) that plaintiff's merchandise is classifiable under item 475.35, TSUS based on an established and uniform practice.

Plaintiff also argues that under 19 C.F.R. § 177.10(b) (1985) "any ruling regarding a rate of duty which is published in the Customs Bulletin will establish a uniform practice." Brief for Plaintiff at 51. Section 177.9(b)(2) of Customs Regulations states:

> Each ruling letter setting forth the proper classification of an article under the provisions of the Tariff Schedules of the United States will be applied only with respect to transactions involving articles identical to the sample submitted with the ruling request or to articles whose description is identical to the description set forth in the ruling letter.

Based on the Court's finding that plaintiff failed to prove that its merchandise is identical to that discussed in C.S.D. 79–476, the Court need not determine whether C.S.D. 79–476 constitutes a "uniform practice" under 19 C.F.R. § 177.10(b).

Finally, plaintiff argues that even if there is no finding of an established and uniform practice under 19 U.S.C. § 1315(d), the Court may make a finding as to whether a uniform and established practice existed concerning the merchandise at the time of entry.

In *Heraeus-Amersil, Inc. v. United States*, 795 F.2d 1575 (Fed.Cir.1986), our appellate court held that this court can find that an established and uniform practice exists in the absence of a "finding" by the Secretary when the Secretary fails to act on a request for such a finding. In *Her-aeus-Amersil* the Court said that the protest, which challenged Customs classification on the basis of an alleged established and uniform practice effectively served as a request that the Secretary to make a finding. The Court interpreted the denial of plaintiff's protest as a failure on the part of the Secretary to act on the request to make a finding of an established and uniform practice. The Court said that "where the Secretary fails to respond to a request that he find the existence of an established and uniform practice, the courts can make that finding in his stead." 795 F.2d at 1581.

 In the present case plaintiff did not request that the Secretary make a finding that there is an established and uniform practice concerning the classification of the merchandise. Nor is there anything in the protest which can be construed as such a request. Under the circumstances, there is no authority under *Hereaus-Amersil* for the Court to make a finding in place of the Secretary as to the existence of an established and uniform practice. Since plaintiff has failed to show a finding of or a request for an established and uniform practice under section 1315(d), or a publication of a uniform practice regarding the merchandise under 19 C.F.R. § 177.10(b), the Court holds that the merchandise is properly classified under item 403.90, TSUS.

Judgment will be entered accordingly. So ordered.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

ORDERED, that this action is dismissed.