**ATARI CARIBE, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court Nos. 89–02–00087, 89–02–00087–S.**

United States Court of
International Trade.

July 14, 1992.

---

George R. Tuttle, P.C., George R. Tuttle III, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Civ. Div., Dept. of Justice, Mark S. Sochaczewsky, Stephen Berke, Atty., U.S. Customs Service, of counsel, for defendant.

## OPINION

RESTANI, Judge:

Plaintiff filed suit contesting the denial of its tariff classification protests by the United States Customs Service ("Customs"). Between April of 1983 and May of 1984, plaintiff Atari Caribe, Inc. ("Atari Caribe") imported merchandise invoiced as chip-on-board ("COB") assemblies through the port of San Juan, Puerto Rico. Atari Caribe entered its merchandise under Item A734.20 of the Tariff Schedules of the United States ("TSUS"), as parts of game machines, seeking duty-free treatment under the Generalized System of Preferences.[1] In August of 1984, Customs liquidated the merchandise under Item 687.74, TSUS.[2] This action was taken pursuant to Customs Headquarters Ruling Letter 072542, issued September 14, 1983, which classified COB devices as monolithic integrated circuits.[3] In November of 1984,

---

**1.** Item 734.20, TSUS, covers game machines, including video games and parts thereof. The prefix "A" preceding the tariff item number indicates a claim for a special duty-free allowance under the Generalized System of Preferences. *See* General Headnote 3(c)(ii), TSUS (1983). Eligibility for such duty-free treatment depends upon timely submission of appropriate documentation to a Customs Service district director. *See* 19 C.F.R. § 10.171–10.178 (1991). Plaintiff included a GSP Form A, certified by the Sing-

apore Board of Trade, in support of its proposed classification.

**2.** Item 687.74, TSUS, covers monolithic integrated circuits, dutiable at the rate of 4.2% ad valorem.

**3.** The record indicates that after importation, plaintiff's COB device was packaged in a plastic housing and sold as a video game cartridge for use in Atari game machines.

Atari Caribe filed protests contesting Customs' classification and requesting further review pursuant to 19 U.S.C. § 1514 (1988). Defendant now moves to limit the scope of plaintiff's action to one issue; specifically, whether there existed a uniform and established practice ("UEP") on the part of Customs to classify plaintiff's merchandise under Item A734.20, TSUS. Defendant also moves to sever and dismiss so much of this action as relates to two of plaintiff's protests, together with the entries they cover, for lack of jurisdiction.

I. *Protest numbers 49094–000178 and 49094–000221 must be severed from this action and dismissed for lack of jurisdiction.*

Defendant moves to dismiss protest numbers 49094–000178 and 49094–000221 for lack of jurisdiction. The record indicates that entries covered by protest number 49094–000178 were liquidated on August 3, 1984, while the protest was filed on November 2, 1984. The entries covered by protest number 49094–000221 were liquidated on August 10, 1984, while the protest was filed on November 13, 1984. Clearly, then, both protests were filed more than ninety days after liquidation of the underlying entries.

■ Pursuant to 19 U.S.C. § 1514(c)(2) and 19 C.F.R. § 174.12(e), upon liquidation of its merchandise an importer has ninety days within which to file a protest. This statute of limitations is strictly construed. Where a protest is untimely filed, courts have declined to assert jurisdiction regardless of the ensuing hardship visited upon a party. *See Noury Chemical Corp. v. United States*, 4 CIT 68, 1982 WL 2245 (1982); *Arista Oil Products Co. v. United States*, 31 Cust.Ct. 251, Abs. 57492 (1953).

■ Where one party challenges the court's jurisdiction in an appropriate manner, it is incumbent upon the adverse party to support the exercise of jurisdiction with competent proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Atari Caribe has had notice of defendant's intent to seek dismissal of these two protests since at least June 13, 1990, the date the government filed its Answer to Plaintiff's First Amended Complaint. Despite almost two years of opportunity for discovery on this issue, plaintiff presents no tangible evidence to counter the prima facie untimeliness which renders these filings stale; instead, plaintiff simply asserts that "it is possible that the two protests in question were timely faxed to Customs but that the actual mailed copies were date-stamped on the date received through the mail, rather than the date received by fax." *See* Plaintiff's Response In Opposition To Defendant's Motion *In Limine* And To Sever And Dismiss, at 2. As a result, plaintiff responds with a request for additional discovery to resolve this factual issue.

■ Atari Caribe has had ample time to develop evidence which supports this assertion, if it exists. In fact, most of the evidence would be within its own control. Significantly, although plaintiff relies upon the recollections of several employees regarding confirmation of faxes with Customs' employees, not one substantiating affidavit has been offered in support. Jurisdiction may not be premised upon bald assertions in light of manifest evidence to the contrary. *See Schering Corp. v. United States*, 67 CCPA 83, 88, C.A.D. 1250, 626 F.2d 162, 167 (1980); *cf. Lowa, Ltd. v. United States*, 5 CIT 81, 83, 561 F.Supp. 441, 443 (1983), *aff'd*, 2 Fed.Cir. (T) 27, 724 F.2d 121 (1984). Given the state of the record, it is inappropriate for the court to exercise jurisdiction over these two protests. Thus, protest numbers 49094–000178 and 49094–000221 must be severed from this action and dismissed.

II. *Plaintiff may introduce independent grounds for classification of COB devices under Item A734.20, TSUS.*

A. Facts.

Protest number 49094–000210 is representative of the other protests at issue in this action. Specifically, Atari Caribe stated:

Protest and Application for Further Review of Protest is hereby made against your classification decision, and the liquidation and assessment of duty on all merchandise consisting of Chip–On–Board devices ... lqiuidated [sic] under Item 687.74 ... or under other provisions of the tariff.

*We claim that* the said merchandise is properly classifiable as assessed, but that an allowance should have been made for ... an exemption from duty under Item 807.00 .... [4]

*We further claim ... that* a uniform and established practice existed prior to the issuance of the ruling of September 14, 1983 to classify such Chip–On–Board ... devices under Item 734.20 (or A734.-20, when eligible for GSP). The change of the established practice, by the said ruling, therefore requires that a prior written notice be published of such change, pursuant to the provisions of 19 U.S.C. § 1315(d) and 19 C.F.R. 177.11(c). [sic] The higher rate of duty under the new classification will, thus, be applicable only to entries made after the publication of the statutorily required prior notice.

Text of Protest No. 49094–000210, dated Oct. 31, 1984 (emphasis added). Apparently, Customs did not consider Ruling Letter 072542 a deviation from an existing UEP since it failed to publish the requisite notice of change in practice, pursuant to 19 C.F.R. § 177.10(c) (1983).

Customs responded to Atari Caribe's protests with two ruling letters. Initially, Customs denied both the UEP and 807

claims in Ruling Letter 077091, issued December 26, 1985. Subsequently, however, Customs amended its decision in Ruling Letter 554075, issued June 10, 1986, by permitting Atari Caribe to present the requisite documentation to support a claim for an 807 exemption. On May 13, 1988, Atari Caribe submitted additional documentation to the District Director of Customs for Puerto Rico. Thereafter, Customs reliquidated plaintiff's merchandise, granting U.S. made components duty-free treatment pursuant to Item 807.00, TSUS, and assessing duty on the remaining components at the rate provided for under Item 687.74, TSUS, in accordance with its original classification.

B. Plaintiff has adequately exhausted administrative remedies.

 As indicated, Atari Caribe brings suit challenging denial of its protests under 19 U.S.C. § 1514(a). [5] Jurisdiction in this court is predicated upon 28 U.S.C. § 1581(a). [6] The first question presented is whether Customs' denial of plaintiff's UEP claims constitutes *partial* denial of a protest as contemplated by 28 U.S.C. § 1581(a) and 19 U.S.C. § 1514(a), despite the fact that plaintiff's alternative 807 claims were ultimately granted in full. In general, either full or partial denial of an importer's protest is a jurisdictional prerequisite to suit. *See National Corn Growers Ass'n v. Baker*, 6 Fed.Cir. (T) 70, 81, 840 F.2d 1547, 1555–56 (1988); *Wear Me Apparel Corp. v. United States*, 1 CIT 194, 195–96, 511 F.Supp. 814, 816 (1981). Only where exercise of § 1581(a) jurisdiction is found to be manifestly inadequate, *see Mast Indus-*

---

4. Item 807.00, TSUS, provides that the value of components fabricated within the United States may be subtracted from the value of imported merchandise before a duty is assessed thereon.

5. 19 U.S.C. § 1514(a) provides in relevant part: [D]ecisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—
　(1) the appraised value of merchandise;
　(2) the classification and rate and amount of duties chargeable; ...
　(5) the liquidation or reliquidation of an entry, or any modification thereof; ...
shall be final and conclusive upon all persons (including the United States and any officer

thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade....
19 U.S.C. § 1514(a) (1988).

6. 28 U.S.C. § 1581(a) provides:
　The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.
28 U.S.C. § 1581(a) (1988).

*tries, Inc. v. Regan,* 8 CIT 214, 221, 596 F.Supp. 1567, 1574 (1984), or results in adherence to useless formality, *United States Cane Sugar Refiners' Ass'n v. Block,* 3 CIT 196, 201, 544 F.Supp. 883, 887, *aff'd,* 69 CCPA 172, 683 F.2d 399 (1982), have courts dispensed with this requirement. The instant case does not present such situations.

In *Sanyo Electric, Inc. v. United States,* 81 Cust.Ct. 114, C.D. 4775 (1978), Customs liquidated plaintiff's merchandise under Item 685.50, TSUS. Plaintiff then protested, requesting classification under either Items 685.30 or 678.50. Upon Customs' denial of plaintiff's preferred claim and reliquidation of the merchandise under the proposed alternative classification, plaintiff filed suit arguing that the protest had been denied in part. The court held that where Customs grants one of several claims, and in so doing entirely abandons its original decision, that protest has been granted in full. *See id.* at 115. Thus, plaintiff's action was dismissed for lack of jurisdiction based on the absence of a protest denied.

■ Significantly, in stating this rule the court noted that the appropriate yardstick is not simply whether all but one among several alternative claims presented in a protest are denied, but the extent to which any part of the original decision survives reclassification. *Id.* at 115.[7] This distinction is particularly evident in the present case. Despite granting Atari Caribe's 807 claims, Customs' original classification of plaintiff's merchandise under Item 687.74 survived as to those components not fabricated within the United States. Clearly this treatment is not in accord with Atari Caribe's alternative claim for complete duty-free treatment under A734.20. Consequently, the continuing assessment of foreign components under the original liquidation classification renders Customs' decision a partial denial of Atari Caribe's protests.[8]

■ The second question presented is whether plaintiff has sufficiently exhausted its administrative remedies. The requirements for exhaustion of administrative remedies in this court are set forth in 28 U.S.C. § 2637.[9] That statute, which requires deposit of duties, has been satisfied. Nonetheless, there remains the general principle that a plaintiff may not raise claims in a civil action before this court which were not raised before Customs via protest. *United States v. Uniroyal, Inc.,* 69 CCPA 179, 182, 687 F.2d 467, 471 (1982) ("Congress did not intend the Court of International Trade to have jurisdiction over appeals concerning completed transactions when the appellant had failed to utilize an avenue for effective protest before the Customs Service."); *Audiovox Corp. v. United States,* 8 CIT 233, 236, 598 F.Supp. 387, 389 (1984) ("To allow an importer to raise a claim in the protest of a reliquidation not raised in the protest to the liquidation, and which could have been raised there, would drain 19 U.S.C. §§ 1514(c)(1) and (d) of all meaning.... [T]he requirements of 19 U.S.C. § 1514 are conditions precedent for jurisdiction in this Court under 28 U.S.C. § 1581(a)....") (citations omitted), *aff'd,* 3 Fed.Cir. (T) 168, 764 F.2d 848 (1985). Accordingly, 19 U.S.C. § 1514(c) and 28 U.S.C. § 2637(a) must be

---

**7.** The court stated: "In reality, the proper measure of the extent to which a protest has been denied or granted is the extent to which the protest has resulted in a change of the protested decision.... The only logically consistent way to determine whether a protest has been denied in part is to see *whether any part of the protested decision remains in effect.*" *Sanyo Electric,* 81 Cust.Ct. at 115 (emphasis added).

**8.** The documentation submitted by Atari Caribe to the District Director of Customs for Puerto Rico in support of its 807 claims indicates that 68% of the original liquidation bill remained owing despite Customs' duty-free treatment of U.S. made components. The court declines to delineate a specific threshold level to which an original decision must survive reclassification in order for a Customs decision to constitute partial denial of a protest. This is best left to a case-by-case determination.

**9.** 28 U.S.C. § 2637 provides in relevant part:

A civil action contesting the denial of a protest under section 515 of the Tariff Act of 1930 may be commenced in the Court of International Trade only if all liquidated duties, charges, or ex-actions have been paid at the time the action is commenced....

28 U.S.C. § 2637(a) (1988).

read together to find the full extent of the statutory exhaustion requirements of an action under 28 U.S.C. § 1581(a).

Although exhaustion of remedies doctrine reflects a general legislative intent to require uniform and orderly consideration of tariff disputes, in certain circumstances it is appropriate for this court to review specific challenges which were not formally presented to Customs via protest. Where an importer timely files a protest, Congress has long sanctioned the raising of new grounds to support a claim in a civil action which contests denial of that protest. The first statutory provision so stating dates to a 1949 amendment to Title 28 of the U.S.C., which added § 2642.[10] Congress reaffirmed its commitment to this position in the Customs Courts Act of 1970. The legislative history to section 113 of that act (28 U.S.C. § 2632 (1973)) states that:

> Section 2632(d) retains the present authority of the court to provide by rule for consideration of any new ground in support of an action before the court if: (1) it applies to the same merchandise that was the subject of the protest; and (2) it is related to the same "administrative decision" contested in the protest.

The term "administrative decision" in section 2632(d)(2) refers to those "decisions" listed in section 514 of the Tariff Act.... Section 514(a), as amended, lists seven categories in which the decision may fall.... The requirement that the new ground raised in the Customs Court be related to the same administra-

tive decision contested in the protest *merely means that the new ground must fall within the same category as the decision contested in the protest* . . . .

[A]n amendment may be allowed where it is clear that the basis of the protest was in the mind of the protestant at the time the protest was filed and that the basis of the protest was made known to the Customs officer so that he could have had an opportunity to correct his mistake.

Section 2632(d) does not change these principles. It retains them in the statute by requiring that any amendment be related to the same administrative decision contested in the protest.

*See* H.R.Rep. No. 267, 91st Cong., 2d Sess. 16–17 (1970), *reprinted in* 1970 U.S.C.C.A.N. 3188, 3204–05 (emphasis added). This provision was similarly incorporated into the Customs Courts Act of 1980 as § 2638.[11]

 In its complaint, for the first time Atari Caribe makes clear that its COB devices should be classified under Item A734.20, TSUS, regardless of whether a UEP would require this result. Plaintiff relies on 28 U.S.C. § 2638 (1988). This raises the issue of whether or not a claim of a prior UEP constitutes a claim as to a classification decision, such that independent grounds may be raised in support of the claimed classification before this court. Plaintiff notes that this court is without

---

**10.** 28 U.S.C. § 2642 (added May 24, 1949) states:

> The Customs Court under its rules and in its discretion may permit amendment of protests, appeals for reappraisement, applications for review, petitions for remission and pleadings.

Act of May 24, 1949, ch. 139, 63 Stat. 89, 106 (repealed by Pub.L. No. 91–271, 84 Stat. 281 (1970)).

The legislative history states that "section 2642 is added to title 28, U.S.C., . . . to remove any possible doubt that amendments of protests, appeals, and pleadings sanctioned by section 518 of the Tariff Act of 1930 may be permitted under title 28 without necessity of reliance upon section 2071 of such title." *See* H.R.Rep. No. 352, 81st Cong., 1st Sess., *reprinted in* 1949 U.S.C.C.S. 1248, 1273. Section 2071 simply provided that each court established by Congress

"may . . . prescribe rules for the conduct of its business." Act of June 25, 1948, ch. 646, 62 Stat. 869, 961 (codified as amended at 28 U.S.C. § 2071 (1988)).

**11.** 28 U.S.C. § 2638 provides:

> In any civil action under section 515 of the Tariff Act of 1930 in which the denial, in whole or in part, of a protest is a precondition to the commencement of a civil action in the Court of International Trade, the court, by rule, may consider any new ground in support of the civil action if such new ground—
> (1) applies to the same merchandise that was the subject of the protest; and
> (2) is related to the same administrative decision listed in section 514 of the Tariff Act of 1930 that was contested in the protest.

28 U.S.C. § 2638 (1988).

jurisdiction to hear new grounds if they do not relate to the original asserted claim. 28 U.S.C. § 2638(2) (1988); *see Gray Tool Co. v. United States*, 6 CIT 333, 334, 1983 WL 2211 (1983). The legislative history to the Customs Courts Act of 1970 evinces a legislative intent that new grounds should simply fall within the same category of decision raised by protest under 19 U.S.C. § 1514(a), in order to be actionable. *See C.L. Hutchins & Co. v. United States*, 67 Cust.Ct. 60, 62, C.D. 4252, 331 F.Supp. 318, 319 (1971). The legislative history to 28 U.S.C. § 2638 reaffirms this position.[12]

■■ To begin, the court notes that defendant does not dispute the characterization of a UEP claim as a classification claim, having conceded this point in its answers to Atari Caribe's first set of interrogatories. Consensus between parties, however, is not dispositive. The court must, even if upon its own initiative, satisfy itself that the exercise of jurisdiction is appropriate. *Schering Corp. v. United States*, 67 CCPA 83, 88, C.A.D. 1250, 626 F.2d 162, 167 (1980). Thus, jurisdictional issues may be raised at any time in the proceedings. *Id.*

The appropriate characterization of a UEP claim has been raised in at least two prior decisions of this Court. In *Dow Chemical Co. v. United States*, 10 CIT 550, 647 F.Supp. 1574 (1986), plaintiff challenged the liquidation classification of its merchandise via protest under 19 U.S.C. § 1514(a)(2). In the subsequent civil action, plaintiff raised for the first time an alleged UEP as an alternative basis for reclassifying its merchandise. Apparently, the facts supporting a UEP were uncovered during civil discovery. Defendant asserted that the court lacked jurisdiction to hear the new "claim." Relying upon 28 U.S.C. § 2638 the court permitted the allegation of UEP to be raised, recognizing that "the merchandise would be classified

differently if the claimed established and uniform practice is found to exist." *Id.* at 556, 647 F.Supp. at 1580. Thus the original challenge to classification and the newly asserted UEP theory of classification were held to fall within 19 U.S.C. § 1514(a)(2). *Id.* at 557, 647 F.Supp. at 1581.

In *CR Industries v. United States*, 10 CIT 561, 1986 WL 9273 (1986), upon reclassification of its merchandise, plaintiff requested a ruling from Customs in which it raised both a UEP issue as well as an independent classification theory. Customs affirmed the reclassification via ruling letter, but declined to address the UEP issue. Plaintiff subsequently filed a protest which omitted the UEP issue. Upon denial of the protest, plaintiff commenced a civil action in which it sought to reassert the UEP allegation in addition to the independent classification challenge. Plaintiff argued that a protest which contests classification encompasses an allegation of a UEP as well. The court rejected this view stating, "Protest as to classification, such as that in the instant case, does not, by itself, constitute protest as to the UEP." *Id.* at 564. Furthermore, the court denied plaintiff § 2638 as a basis for admitting the UEP claim because plaintiff had raised the UEP argument and then appeared to have abandoned it in its protest after Customs advised it that factual support for the UEP claim was lacking.[13] This was a clear distinction from *Dow Chemicals*. The case at hand is also distinguishable from both *Dow Chemicals* and *CR Industries* in that the fact-bound UEP issue clearly was raised by protest and the independent legal issues concerning classification are the focus of the protest interpretation dispute. In any case, the court finds that the jurisdictional prerequisites of 19 U.S.C. § 1514 are met for the following reasons.

■■ The essence of a finding of a UEP is a determination that Customs con-

---

12. *See* H.R.Rep. No. 1235, 96th Cong., 2d Sess. 57, *reprinted in* 1980 U.S.C.C.A.N. 3729, 3769 ("This [provision] restates existing law as set forth in 28 U.S.C. § 2632(d).")

13. The court stated: "Plaintiff may not take advantage of 28 U.S.C. § 2638 (1982) because

the UEP claim is not a 'new ground' being asserted for the first time before this Court. Instead, plaintiff argues that the protest regarding classification encompasses the claimed UEP." *CR Industries*, 10 CIT at 564.

sistently classified a specific type of merchandise under a particular category of the tariff schedules prior to some distinct point in time, and that Customs altered this practice without providing reasonable notice of such change. The statutory basis for a UEP claim is found in 19 U.S.C. § 1315(d); [14] this provision amounts to recognition of an expectation interest in prevailing tariff duties. It reflects a legislative concern that it would be unfair to assess higher duties, as the result of a reclassification, on goods imported with the genuine belief that Customs would continue to adhere to an existing classification practice. By providing importers with a reasonable period within which to conclude transactions entered into under a previously existing duty rate, and to adjust future prices to account for the increase in duty, § 1315(d) provides uniformity with regard to *classification* matters. *Heraeus–Amersil, Inc. v. United States,* 8 CIT 329, 332 n. 6, 600 F.Supp. 221, 224 n. 6 (1984); *cf. Peugeot Motors of America v. United States,* 8 CIT 167, 171, 595 F.Supp. 1154, 1157 (1984). Additionally, as the court in *Dow Chemical* observed, the direct result of establishing the existence of a prior UEP is an immediate *reclassification* of the imported merchandise. *Dow Chemical,* 10 CIT at 556, 647 F.Supp. at 1580. Such merchandise is then reliquidated at the rate provided for under this new *classification.* The implication of these observations is clear. An allegation of a prior UEP is properly characterized as a claim as to classification under 19 U.S.C. § 1514(a)(2).

Other considerations do not militate against this conclusion. It is of no consequence that in some circumstances an alleged UEP may be characterized as a liquidation issue under 19 U.S.C. § 1514(a)(5).

*Dow Chemical,* 10 CIT at 556–57, 647 F.Supp. at 1580–81; *cf. Pagoda Trading Co. v. United States,* 9 CIT 407, 408–10, 617 F.Supp. 96, 97–98 (1985), *aff'd,* 5 Fed. Cir. (T) 10, 804 F.2d 665 (1986). The critical relationship between the UEP allegation as a classification issue and plaintiff's claim that the classification that formed part of the UEP was indeed correct remains intact; thus, the statutory requirement is met. That Atari Caribe's newly refined claims assert classification under A734.20 for different reasons than its original UEP claim is also immaterial. *See C.L. Hutchins,* 67 Cust.Ct. at 62, 331 F.Supp. at 320 ("Congress did not intend to deny the court jurisdiction where the new ground relates to the same merchandise and falls within the same category of administrative decision.") Since both the new and the old theories address the issue of proper *classification* of the same merchandise under the same TSUS provision, the statute clearly is satisfied. In sum, the court finds that an alleged UEP claim is an inherent challenge to a classification decision within the meaning of 19 U.S.C. § 1514(a)(2). Therefore, pursuant to 28 U.S.C. § 2638, Atari Caribe may properly assert independent bases for classification of COB devices under Item A734.20, TSUS, as "new grounds" in support of its prior challenge to Customs' classification decision.

■ Defendant also argues that, nonetheless, Atari Caribe should be prohibited from raising new grounds because Customs was not provided with an opportunity to review the merit of these claims. As the court in *CR Industries* acknowledged, 19 U.S.C. § 1514(c)(1) requires that a protest contain a statement sufficient to apprise Customs of the complete nature of the claim.[15] 10 CIT at 563; *see Computime,*

---

**14.** 19 U.S.C. § 1315(d) provides in relevant part:
No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publica-

tion in the Federal Register of notice of such ruling. . . .
19 U.S.C. § 1315(d) (1988).

**15.** It may be that there is a discretionary aspect to the exhaustion of administrative remedies principle for 28 U.S.C. § 1581(a) cases, which the court finds would not bar this claim for the reasons discussed in the text. This may be the basis for the *CR Industries* ruling.

*Inc. v. United States,* 3 Fed.Cir. (T) 175, 180–81, 772 F.2d 874, 878–79 (Fed.Cir.1985). This comports with the policy goal of ensuring the orderly consideration of claims. *Pagoda Trading Co.,* 9 CIT at 409–10, 617 F.Supp. at 98. Defendant cites *Hensel Bruckmann & Lorbacher, Inc. v. United States,* 57 Cust.Ct. 52, C.D. 2723 (1966) (clerical error not brought to attention of examiner) in support of its argument. The court finds this line of reasoning inapposite. Raising an allegation of UEP via protest implicitly alerts Customs to other independent grounds which may support the asserted classification. This rationale follows from the nature of an investigation into the legitimacy of the purported UEP. In determining whether a prior practice existed, Customs necessarily will examine whether independent grounds existed to justify such a practice. While a UEP may be established by showing "actual uniform liquidations" over a period of time, *see Heraeus–Amersil, Inc. v. United States,* 9 CIT 412, 415, 617 F.Supp. 89, 92 (1985), *aff'd,* 4 Fed.Cir. (T) 95, 795 F.2d 1575 (1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987), this is not the end of the inquiry. When a protest raises a UEP claim, Customs must also satisfy itself of the reasonableness of the classification under which it liquidated the imported merchandise. The importer is, after all, contesting that classification. This requires assessing the merit of an alleged prior classification practice. To portray a UEP investigation as a mere exercise in bean counting, one which disregards inquiry into potential justifications for the alleged prior practice, disregards the need for continuing proper classification of the merchandise. Furthermore, hair splitting in attempting to determine the extent of notice to Customs may be inappropriate in view of the court's duty to find the proper classification. *See Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 (1984).

## C. Plaintiff did not waive alternative grounds for its classification claim.

Defendant also argues that the language employed by Atari Caribe in its protests expressly concedes that Customs properly liquidated the merchandise under Item 688.74, TSUS; consequently, defendant argues that Atari Caribe should be *estopped* from raising new grounds in this action. Although defendant's arguments have some plausibility upon a facial reading of the protests, they do not hold up under closer examination. In any case, waiver should be clear. Not only is waiver not clear, it is not the best reading of the protests. Atari Caribe's protests raise two distinct claims which, when read together, evince an intent to preserve a claim that Customs liquidated plaintiff's merchandise under an improper classification.

Atari Caribe's protests can be separated into three distinct elements. The first paragraph contains a statement of the administrative decision being contested. The second paragraph raises a claim for duty-free treatment of U.S. made components under Item 807.00, TSUS. By stating that "the said merchandise is properly classifiable as assessed," Atari Caribe apparently concedes the validity of Customs' liquidation of its merchandise under Item 687.-74. Finally, in the third paragraph plaintiff raises a claim for complete duty-free treatment under Item A734.20. As previously noted, this paragraph constitutes a classification claim under 19 U.S.C. § 1514(a)(2).

 A claim for partial duty-free treatment raised under Item 807.00 constitutes a challenge to appraisement which is properly categorized under § 1514(a)(1). *Green Giant Co. v. United States,* 79 Cust.Ct. 61, 65, C.D. 4715 (1977).[16] Thus plaintiff's protests raise two separate and distinct arguments; first, that Customs im-

---

**16.** The mere fact that items contained in TSUS, schedule 8, are referred to as 'Special Classification Provisions' does not limit the provisions in schedule 8 to classification. Not all provisions of schedule 8 are directly concerned with the classification and rate of duty

of imported merchandise. Items 806.20, 806.30 and 807.00 *supra,* by the very nature of the language utilized therein, relate directly to valuation of merchandise claimed to be entitled to treatment as American goods returned. *Green Giant Co.,* 79 Cust.Ct. at 64.

properly *appraised* the merchandise by not accounting for components fabricated within the United States, and second, that Customs improperly *classified* the merchandise by not recognizing a prior UEP. Defendant's argument improperly attempts to link the concession made in conjunction with the appraisement claim to Atari Caribe's separate and distinct classification claim.

Plaintiff argues that it was necessary to assume that Customs would uphold the assessed classification when articulating its 807 appraisement claim; had Customs granted the alternative UEP claim and afforded the merchandise complete duty-free treatment, the 807 claim would be obviated. While it is not readily apparent why an 807–based protest would necessitate concession on this point, as Customs could have granted both claims, plaintiff's assumption is not unreasonable. Standing alone, an 807 claim implicitly accepts the assessed classification under which merchandise is liquidated. Unfortunately, by including this practical observation Atari Caribe clouds the dual nature of its protests.

■■■■ While a protest must be specific enough to establish that objections subsequently made at trial were contemplated by the importer and raised before Customs, it need not be an exercise in artful pleading. *See* R. Sturm, *Customs Law & Administration,* § 10.4, p. 26 (1990). Plaintiff appropriately cites the familiar maxim that "however cryptic, inartistic, or poorly drawn a communication may be, it is sufficient as a protest for purposes of section 514 if it conveys enough information to apprise knowledgeable officials of the importer's intent and the relief sought." *Mattel, Inc. v. United States,* 72 Cust.Ct. 257, 262, C.D. 4547, 377 F.Supp. 955, 960 (1974). Though the instant protests may be poor examples of legal draftsmanship, they are still sufficient to convey Atari Caribe's intent to preserve an independent classification claim.

At first glance it may appear that because the UEP claim is introduced second, it is to be construed subordinately to other previously made claims and concessions. This reading, however, is inconsistent. A protest which contests classification, as a UEP claim does, cannot also concede the validity of the assessed classification. By introducing its UEP claim with the phrase "[w]e further claim," Atari Caribe communicated its intent to assert an independent basis for protesting the liquidation. Thus, the UEP claim is unrelated to, and may not be limited by, a previous concession which relates solely to an appraisement-based theory. As a result, Atari Caribe is not *estopped* from raising new grounds in support of its claim that Customs' classification of its merchandise under Item 687.74 was incorrect.

D. Alternative classifications to Item A734.20, TSUS.

■■■■ Atari Caribe also proposes Item A688.43, TSUS, as an alternative classification should the court find that both Items 687.74 and A734.20 are inappropriate. As indicated, this court is required to examine not only the validity of an importer's claims, but the correctness of the government's classification as well. *Jarvis Clark Co.,* 2 Fed.Cir. (T) at 75, 733 F.2d at 878. Thus, as the court permits plaintiffs to raise the issue of the proper classification of the merchandise beyond mere UEP allegations, it is also proper for Atari Caribe to suggest alternative classifications against which Customs' decision may be weighed. As a result, the court finds it is appropriate to consider all of the theories raised by plaintiff in its complaint.

III. *Conclusion.*

For the foregoing reasons, defendant's motion *in limine* to limit plaintiff to an appeal of Customs' denial of its UEP claim is denied. In addition, protest numbers 49094–000178 and 49094–000221 are severed from this action and designated as Court No. 89–02–00087–S, which action is hereby dismissed for lack of jurisdiction.