MANIFATTURA EMMEPI S.P.A., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 90–06–00275

(Decided September 15, 1993)

*Siegel, Mandell & Davidson, P.C. (Brian S. Goldstein* and *David Newman)* for the plaintiff.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, U.S. Department of Justice, Civil Division *(Velta A. Melnbrencis)*; and Office of the Chief Counsel for Import Administration, U.S. Department of Commerce *(Edward Reisman),* of counsel, for the defendant.

### MEMORANDUM

AQUILINO, *Judge:* This court's Slip Op. 92–115, filed herein and reported at 16 CIT 619, 799 F.Supp. 100 (1992), familiarity with which is presumed, granted plaintiff's motion for judgment upon the record compiled by the International Trade Administration, U.S. Department of Commerce ("ITA") *sub nom. Final Results of Antidumping Duty Administrative Review; Spun Acrylic Yarn From Italy,* 55 Fed.Reg. 18,925 (May 7, 1990),

> to the extent that its complaint about choice of best information otherwise available is remanded to the ITA for reconsideration and redetermination of the margin of dumping, if any, of plaintiff's merchandise during the review periods April 1, 1987 to March 31, 1989.

16 CIT 625, 799 F.Supp. at 116. The margin for which the agency originally had opted was 48.05 percent. According to the *Final Results of Redetermination Pursuant to Court Remand,* the ITA opts now for a rate of 14.06 for the periods in question upon the following rationale:

> * * * [W]e cannot select either Emmepi's last calculated rate of 0%, nor the highest calculated rate for the 1987–88 review as BIA. Therefore, the Department has selected a rate that both meets the Court's instructions and may be sufficiently adverse so as not to reward Emmepi for its unresponsive behavior. Accordingly, we have selected 14.06%, the highest calculated rate in the 1986–87 review *(i.e.,* the review immediately prior to the first of these remanded reviews). This rate was calculated for a cooperative company during a review period in which Emmepi also cooperated. Further, the rate

may be adverse enough to serve as a disincentive to Emmepi and other potential respondents not to cooperate in a future proceeding.

The plaintiff has responded to this reasoning with a request that the court remand the matter for a second time to the ITA.

The record does show that Manifattura Emmepi participated in the ITA review of the period 1986–87, and the defendant therefore argues that the choice of the rate calculated for another respondent in that review is appropriate because a "relationship does exist [ ] between plaintiff's merchandise and the 14.06 percent rate." Defendant's Reply to Plaintiff's Response to Remand Results, p. 7. The plaintiff disagrees, contending that that rate is "legally unjustifiable and excessive." Plaintiff's Response to Remand Results, p. 1. Echoing earlier arguments, the plaintiff claims that selecting the highest rate for a respondent in a prior administrative review is inconsistent with agency practice and violates the Administrative Procedure Act. Again relying on the ITA's report on another administrative review,[1] the plaintiff argues that the only permissible choice is between its own previous rate or the highest rate calculated for a responding company in the review(s) at issue. In this case, such a choice could therefore be between the zero-percent margin calculated for the plaintiff for the period 1986–87 and the *de minimis* margin calculated for the only other fully responding firm in the 1987–88 review period, 0.01 percent.

However, as pointed out in Slip Op. 92–115, the rate from an underlying less-than-fair-value investigation can be the best information otherwise available,[2] and the court's sustaining of plaintiff's original objection to the use of that rate was not based on a conclusion that resort thereto was *per se* contrary to law, only that the agency's authority to select best information otherwise available "is subject to a rational relationship between data chosen and the matter to which they are to apply." 16 CIT at 624, 799 F.Supp. at 115. But the court cannot agree that such a relationship restricts the ITA to the previous rate for the plaintiff or to that for a currently cooperating party. Notwithstanding *Titanium Sponge From Japan,* the agency can choose the best information otherwise available which is relevant to the circumstances of the party in question.

Here, the court cannot and therefore does not conclude that the choice of 14.06 percent, the highest rate calculated for a respondent in the administrative review of 1986–87, in which the plaintiff had cooperated, is not in accordance with law. The argument that this rate is excessive in the light of no prior history of dumping of the subject merchandise on plaintiff's part is not persuasive. That a firm has no margin in one review does not necessarily foretell future margins. If the

---

[1] *Titanium Sponge From Japan; Final Results of Antidumping Duty Administrative Review,* 55 Fed.Reg. 42,227 (Oct. 18, 1990).

[2] *See* 16 CIT at 624, 799 F.Supp. at 115.

4.92-percent cash-deposit rate established earlier made it financially onerous to continue shipments to the United States, as the plaintiff claims, such a scenario does not foreclose the ITA. Nor can it be said that the plaintiff was not on notice of the possible consequences of failure to respond to questionnaires. *Cf.* Plaintiff's Response at 3–4. In a prior administrative review, the ITA had used a rate of 43.05 percent as the best information available for other nonresponding firms. *See Spun Acrylic Yarn From Italy; Final Results of Administrative Review,* 48 Fed. Reg. 37,680 (Aug. 19, 1983). Furthermore, the ITA has often stated that it selects best information otherwise available in a manner so as to encourage firms to comply with requests for information during administrative proceedings. Of course, this generally leads to rates adverse to nonresponding parties, and the plaintiff cannot now claim unfairness of the result herein.

In sum, plaintiff's request for a second remand must be denied. Judgment will enter accordingly.