vice department documents or certifies their service.

Where service department certification is required, *see* 38 C.F.R. § 3.203(c), the VA has long treated the service department's decision on such matters as conclusive and binding on the VA. *See Duro v. Derwinski,* 2 Vet.App. 530, 532 (1992). Thus, if the United States service department refuses to verify the applicant's claimed service, the applicant's only recourse lies within the relevant service department, not the VA. This court sees no error in that treatment. Because the United States Department of the Army refused to certify Mr. Soria's alleged service in the Philippine Army, the VA properly refused to consider his claim for veterans' benefits based on that service.

### CONCLUSION

This court finds no error in the decision of the Court of Veterans Appeals and, accordingly, affirms.

### COSTS

Each side shall bear its own costs.

*AFFIRMED.*

**TRAVENOL LABORATORIES, INC., Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 96–1534.

United States Court of Appeals, Federal Circuit.

July 2, 1997.

Mark S. Zolno, Katten, Muchin & Zavis, Chicago, IL, argued, for plaintiff-appellant. With him on the brief was Michael E. Roll. Of counsel on the brief was Charles R. Mattenson, Corporate Counsel, Baxter Healthcare Corporation, McGaw Park, IL.

James A. Curley, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, New York City, argued, for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Washington, DC, and Joseph I. Liebman, Attorney in Charge, International Trade Field Office, New York City. Of counsel on the brief was Sheryl A. French, Office of Assistant Chief Counsel, United States Customs Service, New York City.

James F. O'Hara, Stein Shostak Shostak & O'Hara, Los Angeles, CA, for amici curiae Nike, Inc. and Nissho Iwai American Corporation. Of counsel on the brief was Michael P. Maxwell, Law Offices of Michael P. Maxwell, Los Angeles, CA.

Michael P. Maxwell, Law Offices of Leonard M. Fertman, P.C., Los Angeles, CA, for amicus curiae Technicolor Videocassette, Inc. Corporation.

Steven P. Kersner, Kersner & Associates, of Washington, DC, for amicus curiae Dal–Tile Corporation. With him on the brief was Roger Banks.

CLEVENGER, Circuit Judge.

This case asks whether certain provisions of the Customs Modernization Act (Mod Act) apply to goods entered before, but liquidated after, that act's effective date of December 8, 1993. The Customs Service (Customs) contends, and the Court of International Trade agreed, that application of those provisions to such goods would be retroactive and impermissible, given the lack of a clear statement by Congress that it intended those provisions to be applied retroactively. Because we conclude that application of the relevant provisions of the Mod Act to the goods in question would not be retroactive, we reverse.

I

Between 1985 and 1992, Baxter Healthcare Corporation (Baxter) imported medical devices used in renal dialysis.[1] Customs classified the devices as dutiable "electro-medical apparatus" and required Baxter to deposit estimated duties on each entry of devices. When Customs liquidated the goods as entered, Baxter filed a protest, arguing that its products were entitled to duty-free entry as "articles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons." Customs, however, denied Baxter's protest.

Baxter challenged Customs' classification decision in the Court of International Trade. That court agreed with Baxter that the goods were entitled to duty-free entry, and entered final judgment on February 3, 1993, directing Customs to reliquidate the entries duty-free and to refund the excess duties deposited, with interest "as provided by law."[2] The entry at issue in the present case was reliquidated on August 18, 1995. The dispute in this case concerns the quantum of interest that must be paid on the reliquidated entry.

The law relating to interest owed changed on December 8, 1993, when Congress enacted the Mod Act as part of the North American Free Trade Implementation Act. Pub.L. No. 103–182, 107 Stat.2057 (codified in scattered sections of 19 U.S.C.). Section 642 of the Mod Act amends 19 U.S.C. § 1505 to provide:

(c) Interest—Interest assessed due to an underpayment of duties, fees, or interest shall accrue, at a rate determined by the Secretary, from the date the importer of record is required to deposit estimated duties, fees, and interest to the date of liquidation or reliquidation of the applicable entry or reconciliation. *Interest on excess moneys deposited shall accrue, at a rate determined by the Secretary, from the*

*date the importer of record deposits estimated duties, fees, and interest to the date of liquidation or reliquidation of the applicable entry or reconciliation.*

19 U.S.C. § 1505(c) (1994) (emphasis added). This change became effective upon enactment. *See* Mod Act § 692, Pub.L. No. 103–182, 107 Stat. 2225.

Pursuant to the judgment of the Court of International Trade, Customs reliquidated the entries duty-free and refunded the duties previously paid by Baxter. In doing so, Customs provided interest, based on 28 U.S.C. § 2644, from the date Baxter filed the summons for each entry to the date of refund.[3] Baxter protested this reliquidation, contending that under amended section 1505(c) interest should be paid for the entire time span from the date of deposit to the date of refund, rather than simply from the date of filing summons for each entry to the date of refund (under § 2644). When Customs denied this protest, Baxter filed a Motion to Enforce Judgment with the Court of International Trade, seeking the additional interest, computed from the date of deposit to the date of summons for each entry, to which it asserted entitlement.

II

Before the Court of International Trade, the parties disputed whether application of amended section 1505(c) to Baxter's entries would constitute a retroactive application of that statute. In arguing that it would not, Baxter cited *Syva Co. v. United States*, 681 F.Supp. 885 (C.I.T.1988), for the proposition that liquidation (as in that case) or reliquidation (as in the present case) is the operative event triggering the time for assessment of interest. Because the entries at issue were reliquidated after the effective date of the Mod Act, Baxter argued that application of section 1505(c) to those goods is prospective, not retroactive.

1. Baxter is the successor to Travenol Laboratories, Inc.

2. The judgment pertaining to the entries in this case was entered on February 3, 1993. On November 29, 1993, and on December 8, 1993, the court also entered similar judgments pertaining to other entries.

3. "If, in a civil action in the Court of International Trade ... the plaintiff obtains monetary relief by a judgment or under a stipulation agreement, interest shall be allowed.... Such interest shall be calculated from the date of the filing of the summons in such action to the date of the refund." 28 U.S.C. § 2644 (1994).

The court, however, agreed with Customs that the relief sought by Baxter would amount to a retroactive application of section 1505(c). While acknowledging the statements in *Syva* that liquidation is the triggering event for assessing interest, the court determined that matters had changed under the amended laws, and that deposit of estimated duties is now the triggering event. The court was led to this conclusion, in part, because the amended statute directs that interest "shall accrue" from the date of deposit to the date of reliquidation. Because deposits for the subject imports had already been paid by the time section 1505(c) was amended, the court concluded that applying it to those deposits would constitute a retroactive application of that law.

Having decided that Baxter was seeking a retroactive application of the law, the court next considered whether Congress had made a clear statement of an intent that section 1505(c) apply retroactively. After analyzing the statute's language as well as its legislative history, the court failed to find the requisite clear statement of retroactive intent. Accordingly, the court denied Baxter's motion to enforce. Baxter appeals.

We review Baxter's appeal from the judgment of the Court of International Trade pursuant to 28 U.S.C. § 1295(a)(5) (1994). The dispositive issue in the present case is the proper interpretation of section 1505(c), a question of law that we review *de novo*. *See Medline Indus., Inc. v. United States,* 62 F.3d 1407, 1409 (Fed.Cir.1995).

### III

■ As the United States Supreme Court has stated, retroactivity in general is not favored in the law and, accordingly, legislation will be construed to operate only prospectively unless Congress has clearly expressed a contrary intention. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 264, 268, 114 S.Ct. 1483, 1496, 1498–99, 128 L.Ed.2d 229 (1994). Under this standard, the first issue is whether application of legislation to certain facts constitutes a retroactive application of that law. Only if the answer to that question is "yes" must we search for a clear expression of congressional intent to apply the law retroactively.

■ Deciding if application of legislation would be retroactive is not a simple or mechanical task but is instead one that "comes at the end of a process of judgment." *Id.* at 268–70, 114 S.Ct. at 1498–1500. Although there exist no hard and fast rules for this decision, we are aided by guidance provided by prior law, which has focused on the interrelationship between the new law and past conduct. Typical of these prior cases is the following formulation by the First Circuit: "The determination of whether a statute's application in a particular situation is prospective or retroactive depends upon whether the conduct that allegedly triggers the statute's application occurs before or after the law's effective date." *McAndrews v. Fleet Bank of Mass., N.A.,* 989 F.2d 13, 16 (1st Cir.1993); *see also Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 857 n. 3, 110 S.Ct. 1570, 1588 n. 3, 108 L.Ed.2d 842 (explaining that the inquiry "depends upon what one considers to be the determinative event by which retroactivity or prospectivity is to be calculated") (Scalia, J., concurring); *Landgraf,* 511 U.S. at 270, 114 S.Ct. at 1499 (stating that the inquiry requires consideration of "the degree of connection between the operation of the new rule and a relevant past event").

Therefore, we must evaluate the importing process in an effort to find the event that triggers the application of section 1505(c). An importer is required to deposit estimated duties with Customs at the time of importation.[4] 19 C.F.R. § 141.101 (1996). At some later time, Customs reviews the entry and makes its final determination as to whether the amount of duty deposited is correct—*i.e.,* Customs liquidates the entry. *See* 19 C.F.R. §§ 159.0–.12 (1996). If an importer is dissatisfied with the liquidation, it may file an administrative protest within ninety days of

---

4. More precisely, an importer must prepare an "entry" within five days of arrival of the goods. 19 C.F.C. § 142.2(a) (1996). Customs reviews the entry and authorizes the release of goods. Within ten days of release, the importer must prepare and submit an "entry summary" to Customs with payment of "estimated duties." 19 C.F.R. §§ 141.101, 142.12(b), 142.16 (1996).

liquidation. 19 U.S.C. § 1514(a)(5), (c)(3) (1994). If Customs denies the protest, the importer may seek judicial review in the Court of International Trade. 28 U.S.C. § 1581(a) (1994). That court may either sustain Customs' determination, or it may require Customs to reliquidate the entry at another duty rate.

■ The statutory provision at issue, section 1505(c), relates to interest—specifically, interest owed for either an underpayment or overpayment of estimated duties. As the foregoing demonstrates, Customs does not determine whether there has been an overpayment or underpayment of estimated duties until it liquidates or reliquidates an entry. *See* 19 U.S.C. § 1500 (1994); 19 C.F.R. § 159.1 (defining liquidation as "the final computation or ascertainment of the duties ... accruing on an entry"). Until that time, both Customs and the importer are on notice that changes may occur. *See Dart Export Corp. v. United States*, 43 C.C.P.A. 64, 76 (1956).[5] Indeed, as our predecessor court has stated, liquidation is "long honored in customs procedure as the final reckoning of an importer's liability on an entry." *Farrell Lines, Inc. v. United States*, 69 C.C.P.A. 7, 667 F.2d 1017, 1020 (1982). Liquidation (or reliquidation), therefore, determines whether there has been an overpayment or underpayment, and thus defines the basis upon which interest might be due. Because section 1505(c) comes into play only after there has been a determination that interest is due, we conclude that liquidation (or reliquidation) is the triggering or operative event for determining whether or not application of section 1505(c) is retroactive. If the goods are liquidated or reliquidated after December 8, 1993, section 1505(c) applies to them.

Our conclusion is consistent with prior decisions of the Court of International Trade, which also recognized liquidation as the operative event for purposes of determining interest. In *Syva*, the importer entered the subject goods in May 1984, claiming duty free treatment. On November 29, 1984, Congress enacted an amendment that prescribed the time when liquidated duties are due and provided for interest on delinquent duty payments. On December 28, 1984, Customs rejected the importer's claim for duty free treatment and liquidated the entry at the applicable duty rate. The importer ultimately paid the duties in January 1986, but did not pay any interest. *Syva*, 681 F.Supp. at 886.

When the importer challenged Customs' decision in the Court of International Trade, Customs sought dismissal of the suit for lack of jurisdiction. Specifically, Customs contended that the importer was required to pay all duties, charges, and exactions before suing in the Court of International Trade, and the importer's failure to pay interest constituted a violation of this requirement. *Id.* at 887. The importer responded that requiring it to pay interest on goods entered before (although liquidated after) enactment of the legislative amendment would be retroactive. *Id.* at 889. The court disagreed, stating the following:

> As the statute merely prescribes the time for payment of duties once the entries are liquidated, and *since liquidation, the operative event triggering the time for assessment of interest, occurred after the statute was enacted, there is no retroactive application* which would deprive plaintiff of any vested substantive right.

*Syva*, 681 F.Supp. at 890 (emphasis added).

The circumstances in *Syva* are quite similar to those in the present case. In each case, goods were entered before, but liquidated (or reliquidated) after, legislation providing for the payment of interest. In each case, the party required to pay interest sought to avoid the obligation by arguing

---

**5.** The retroactivity inquiry also requires us to consider "whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 270, 114 S.Ct. at 1499. The Mod Act provision relating to interest does not attach new legal consequences to any events that occur before liquidation because, being preliminary in nature, those events do not give rise to interest liability. The event that gives rise to interest liability is liquidation or reliquidation, which, in the present case, had not been completed before the new provision became effective.

that application of the legislation to those entries would be retroactive.

Customs seeks to distinguish *Syva* based on differences between the legislation at issue in that case and that at issue here. Customs argues that liquidation was the operative event in *Syva* because that statute provided that interest became payable if duty was not paid within 30 days of liquidation. In other words, interest began to accrue only after liquidation occurred. In contrast, Customs argues, the provision at issue in the present case provides that "[i]nterest on excess moneys deposited *shall accrue* ... from the date the importer of record deposits estimated duties." 19 U.S.C. § 1505(c) (emphasis added). Under this provision, Customs argues, the triggering event is the date the duties were deposited because interest begins to accrue on that date. Because amended section 1505(c) had not been enacted when Baxter deposited excess moneys in February 1988, Customs argues, interest did not begin to accrue at that time.

We are not persuaded by Customs' argument. It is not logical to state that interest begins to accrue on the date that estimated duties are deposited, because the principal amount (*i.e.*, the amount of underpayment or overpayment) is not known as of that date. As explained above, the principal amount is not determined until liquidation or reliquidation. Only once there has been a determination that an underpayment or overpayment existed can either party become entitled to receive interest.

■ To be sure, once it is determined that interest is owed, measurement of the quantum requires consideration of the date when estimated duties were deposited. It is to this measurement function that the statutory language is directed when it states that interest "shall accrue ... from the date the importer ... deposits estimated duties." The mere

fact that the new legislation requires reference to antecedent events or data, however, does not make its application retroactive. *Landgraf,* 511 U.S. at 269, 114 S.Ct. at 1499; *McAndrews,* 989 F.2d at 16 (stating that "a statute does not operate retroactively simply because its application requires some reference to antecedent facts"). Therefore, the statutory language that interest "shall accrue" does not alter the triggering event for application of section 1505(c); that event remains liquidation or reliquidation. The statutory language merely informs the measurement of the amount owed.

In conclusion, we hold that application of amended section 1505(c) to goods entered before, but liquidated (or reliquidated) after, its effective date of December 8, 1993, does not constitute a retroactive application of that provision. In the present case, it is undisputed that the entries at issue were entered before, but reliquidated after, December 8, 1993. Therefore, we conclude that application of amended section 1505(c) to those goods does not constitute a retroactive application of that statutory provision. As a result, we need not reach the issue of whether Congress clearly intended that provision to apply retroactively.

### IV

For the reasons stated, the decision of the Court of International Trade is reversed.

No costs.

*REVERSED*