**Slip. Op. 00-35**

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

---

|  |  |  |
|---|---|---|
| | **:** | |
| MARATHON OIL COMPANY, | **:** | |
| Plaintiff, | **:** | Court No. 95-09-01207 |
| v. | **:** | **Before: Barzilay, Judge** |
| UNITED STATES, | **:** | |
| Defendant, | **:** | |

---

[Plaintiffs' Motion for Summary Judgment granted in part; remanded to Customs for further findings.]

Decided: April 5, 2000

Phelan & Mitri (Michael F. Mitri), for Plaintiff.

David W. Ogden, Acting Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office; (Amy M. Rubin), Trial Attorney, Civil Division, Department of Justice, Commercial Litigation Branch; Chi S. Choy, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of counsel, for Defendant.

## OPINION

**BARZILAY, JUDGE:**

### I. INTRODUCTION

Marathon Oil Company ("Marathon") brought this action challenging denials by the U.S. Customs Service ("Customs") of fifteen duty drawback claims filed by Marathon pursuant to the substitution manufacturing provisions of the drawback law, contained in 19 U.S.C. §1313(b)(1994).

This Court has jurisdiction pursuant to 28 U.S.C. § 1581(a)(1994).

For the reasons set forth in the following opinion, the Court holds there is no legal impediment for Marathon to claim drawback on its importations of crude petroleum. As explained in the following opinion, however, this case is remanded to Customs to determine whether the entries at issue contained properly designated eligible, duty-paid merchandise qualifying under the substitution provision of the drawback law. Therefore, Plaintiff's motion for summary judgment is granted in part.

## II. BACKGROUND

Marathon is a United States petroleum company that owns and operates refineries in several towns throughout the country. It imports crude oil, manufactures a variety of petroleum products, and then exports those products. Marathon maintains a duty drawback program under which it recovers duties that it has paid on imported crude oil through its export of refined petroleum products manufactured from the imported crude oil. This case concerns a series of drawback claims, filed between May 1987 and November 1991, under 19 U.S.C. §1313(b), the provision on substitution for drawback purposes, which provides in relevant part:

> If imported duty-paid merchandise and any other merchandise (whether imported or domestic) of the same kind and quality are used in the manufacture or production of articles within a period not to exceed three years from the receipt of such imported merchandise by the manufacturer or producer of such articles, there shall be allowed upon the exportation, or destruction under customs supervision, of any such articles, notwithstanding the fact that none of the imported merchandise may actually have been used in the manufacture or production of the exported or destroyed articles, an amount of drawback equal to that which would have been allowable had the merchandise used therein been imported . . . .

Marathon imports a major portion of its foreign-sourced crude oil through the Louisiana

Offshore Oil Port, referred to as "LOOP." *Pl.'s Mem. of Law in Supp. of Pl.'s Mot. for Summ. J.* at 6 ("*Pl.'s Mem.*"). The LOOP facilities receive approximately 30% of all crude oil imported into the United States. The facilities receive up to 1.2 million barrels of crude oil per day from ocean vessels, and the oil is stored in caverns dedicated to a single "type" or "grade" of crude oil as determined by its American Petroleum Institute ("API") gravity and sulfur content. *Id.* Several shippers store their oil at the LOOP at any given time, and imports from different oil manufacturers of the same type of crude oil are commingled in the caverns. *Id.* Plaintiff states that the oil must be stored in commingled caverns because segregated storage by shipper is not economically feasible. *Id.* at 25. "As such, it generally cannot be said that Marathon receives and uses at its refineries the actual, physical molecules of crude oil that it imported and discharged at the LOOP platform." *Id.* From LOOP storage, crude oil is removed from the caverns and delivered to Marathon's refineries.

Customs initiated an administrative audit of one of Marathon's claims in June 1988 and recommended denial of the claim based on procedural deficiencies. Thereafter, Customs requested internal advice from Customs Headquarters in connection with its review of Marathon's subject drawback claims. The issue to be determined was whether the oil imported through the LOOP could be considered "received" as required by the substitution manufacturing drawback provision in light of the fact that it was commingled with other importers' crude oil prior to delivery to Marathon's refineries.

Customs Headquarters issued two rulings in response to the request.[1] The rulings stated that

---

[1] Headquarters Ruling Letter ("HRL") 221794 (Nov. 24, 1989), and HRL 224812 (Feb. 15, 1995).

under subsection 1313(b),

> (1) a manufacturer must ultimately receive the actual merchandise it imports even if the merchandise is initially received by some other entity; and (2) the commingling of imported designated crude oil with other importations of crude oil, whether of the same kind and quality or whether of different classes, prior to receipt at the claimant's facility precludes drawback eligibility.

*Def.'s Mem. in Support of its Cross-Mot. For Summ. J. and in Opp. to Pl.'s Mot. for Summ. J.* at 2 ("*Def.'s Mem*.").  After the Headquarters documents were issued, Marathon submitted to Customs proposed amendments of the subject drawback claims to designate non-LOOP duty paid, imported crude oil that presented no question of pre-refinery receipt commingling.   These proposed amendments were denied, as were the subsequently filed administrative protests.

Plaintiff thereafter brought this suit, asserting that Customs was incorrect in denying the subject drawback claims.  Plaintiff advances two arguments in support of its motion for summary judgment.  First, the imported duty-paid crude oil initially designated by Marathon under the subject drawback claims was eligible for designation under the substitution manufacturing provisions of the drawback law, because "receipt" within the meaning of subsection 1313(b) does not require that the actual molecules of imported oil be received in Marathon's refineries.  Second, should the Court find Plaintiff's first contention to be erroneous, Plaintiff validly and correctly amended the subject drawback claims to designate eligible imported, duty paid oil.  Defendant filed an opposition to Plaintiff's motion and a cross-motion for summary judgment in its favor.  Because the Court finds Plaintiff to be correct on its first point, it grants Plaintiff's motion and declines to reach the issue of the amended claim.

### III. STANDARD OF REVIEW

Plaintiff brings this action within the Court's jurisdiction pursuant to 28 U.S.C. §1581(a),

alleging that Customs erred in denying Marathon's substitution drawback claims.  The issue before the

Court, whether the term "receive" as it is used in the drawback statute, favors the meaning attributed to

it by Customs or that by Marathon, is one of statutory construction.  Such claims are reviewed *de*

*novo*, and in this instance the Court owes no deference to Defendant's interpretation.[2]  Although there

is a statutory presumption of correctness for Customs decisions, 28 U.S.C. § 2639(a)(1), when the

Court is presented with a question of law in a proper motion for summary judgment, that presumption is

not relevant.  *Blakley Corp. v. Unit*ed *States*, 22 CIT ___, 15 F. Supp.2d 865, 869 (1998), (citing

*Universal Electronics, Inc. v. Unit*ed *States*, 112 F.3d 488, 492 (Fed. Cir. 1997); *see also*

*Goodman Manufacturing L.P. v. Unit*ed *States*, 69 F.3d 505, 508 (Fed. Cir. 1995) ("Because

there was no factual dispute between the parties, the presumption of correctness is not relevant.")).

This case is before the Court on cross-motions for summary judgment.  "When deciding cross-

motions for summary judgment, the Court considers each motion separately, and on each views the

facts in the light most favorable to the non-moving party." *United States v. So's USA Co., Inc.,* 23

CIT — (1999), 1999 WL 675408.  USCIT R. 56(d) provides that summary judgment may be granted

---

[2]In instances of statutory interpretation, if Congress' intent is clear, no deference is given the agency's construction; however, if Congress' intent is unclear, the court must defer to the agency's interpretation if it is a reasonable construction of the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984).  The Supreme Court extended *Chevron* deference to administrative regulations in *United States v. Haggar Apparel Co.*, 526 U.S. 380, —, 119 S.Ct. 1392, 1399 (1999).  However, *Chevron* deference is not accorded to customs rulings, as they are not subject to notice and comment procedures. *See Mead Corp. v. United States*, 185 F.3d 1304, 1307 (1999).  "Customs rulings do not carry the force of law and are not, like regulations, intended to clarify the rights and obligations of importers beyond the specific case under review. Instead, a ruling merely interprets and applies Customs law to 'a specific set of facts.'" *Id.* (quoting 19 C.F.R. § 177.1(d)(1)(1999)).  The Court therefore owes no deference to the Customs Headquarters Rulings at issue in this case.

if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It is the Court's duty to determine whether there are any factual disputes material to the resolution of the action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-8 (1986). The basic disputed issue in this case is legal: whether Customs was correct in determining that the drawback statute requires proof that Marathon received the actual molecules of imported crude oil in order for it to be eligible for drawback of duties. Therefore, summary judgment is proper on this issue.

### IV. DISCUSSION

This case centers on the meaning of the term "receipt" within the substitution drawback statute. If Plaintiff can show that it received the merchandise within that meaning, it may be eligible for the statutory privilege of drawback.[3] As "receipt" is not defined in the statute, the Court uses traditional tools of statutory construction. *See Timex V.I., Inc. v. United States*, 157 F. 3d 879, 881 (Fed. Cir. 1998). "Beyond the statute's text, these 'tools' include the statute's structure, canons of statutory construction, and legislative history." *Id.* at 881 (citing *Dunn. v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 470-79 (1997)).

### A. Textual Meaning

Both parties advocate mutually distinct interpretations of the term "receipt." Plaintiff submits that the standard dictionary definition of the term is "to take into possession or delivery," and the legal

---

[3]The Court recognizes Defendant's statement that "drawback, which is an exemption from duty, is a statutory privilege obtainable only . . . [if Marathon shows] that it met the conditions applicable to the asserted basis for drawback . . . ." *Def.'s Mem*. at 6.

definition is "to take possession and control." *Pl.'s Mem*. at 12 (quoting WEBSTER'S THIRD NEW

INTERNATIONAL DICTIONARY 1894 (1986); BLACK'S LAW DICTIONARY 1433 (4th ed. 1968)).

Marathon claims that its relationship with the LOOP-imported crude oil falls within these definitions.

Marathon took title and risk of loss to all of the imported crude oil when it was discharged at the

LOOP facility. *Id.* Marathon retained that title and risk of loss throughout its storage at the LOOP and

transportation up until its delivery to Marathon's refineries. *Id.* Marathon therefore possessed and

controlled the oil from the time it was delivered to LOOP for storage until the time it was exported as

refined petroleum products. It generally did not enter Marathon's physical custody until it was

delivered to Marathon's refineries; nevertheless, Marathon clearly received the imported, duty-paid

crude oil for all common, commercial, and legal purposes.

Additionally, the Court recognizes Plaintiff's theory that it received the oil which was held in the

LOOP caverns under an implied bailment arrangement with LOOP. *Pl.'s Mem*. at 13. "Bailment" is

addressed in AM. JUR. 2D as follows:

> A bailment is created by the delivery of personal property by one person to another *in trust for a specific purpose*, pursuant to an express or implied contract to fulfill that trust. Inherent in the bailment relationship is the requirement that the property be returned to the bailor, or duly accounted for by the bailee, when the purpose of the bailment is accomplished, or that it be kept until it is reclaimed by the bailor. . . . Although a bailment is ordinarily created by agreement of the parties, resulting in a consensual delivery and acceptance of the property, such a relationship may also result from the actions and conduct of the parties in dealing with the property in question. 8A AM. JUR. 2D *Bailments* §1 (1997) (emphasis added).

The oil imported by Marathon was conveyed to LOOP for storage until later delivery to Marathon's

refineries; this relationship may accurately be interpreted as delivery of personal property in trust for a

specific purpose. Subsection 1313(j) of the drawback statute indicates Congress' intent that one is in

possession of a product while that product is in bailment.[4]  Plaintiff logically infers from the statutory language, that it could not possess the oil within the language of the statute without first having received it.  Possession requires prior receipt.

Plaintiff's meaning attributed to the term receipt accommodates the reality of the oil importation business.  Although an importer using the LOOP facility does not ordinarily receive the actual molecules of the oil he imports, and the oil may be held in storage at another facility, for all intents and purposes, the oil is received by the importer.

By contrast, Defendant states simply that the drawback statute requires an exporter to be able to prove receipt of the actual imported merchandise.  If Marathon cannot prove physical receipt of the actual molecules of crude oil, it fails the receipt requirement and is ineligible for drawback.  *Def.'s Mem.* at 8.  "Plainly, if Marathon was unable to retrieve the actual merchandise it imported from the LOOP, it could not have received that merchandise at any of its manufacturing facilities."  *Id.*

Because both textual interpretations are feasible, there is no "plain and unambiguous meaning" of the term "receipt."  *Timex*, 157 F. 3d at 882 (quoting *Muwwakkil v. Office of Personnel Management*, 18 F. 3d 921, 925 (1998)).  Therefore, the Court cannot derive the meaning from the text of the statute alone and must look elsewhere for that meaning.

### B.  Legislative History

The Court notes the purpose of the substitution drawback statute, as stated in the legislative history of 19 U.S.C. §1313:

---

[4]*Pl.'s Mem.* at 13 references 19 U.S.C. §1313(j)(2)(C)(ii), which states, "is in the possession of, *including ownership while in bailment. . . .*" (emphasis added).

The payment of drawbacks is designed to relieve domestic processors and fabricators of imported dutiable merchandise, in competing for export markets, of the disadvantages which the duties on the imported merchandise would otherwise impose on them. . . . [The substitution provision] was designed to relieve processors . . . of the difficulty and expense of specifically identifying the imported materials that had been used in the production of exported products in order to establish eligibility for drawback.

S. REP. NO. 2165 (1958), *reprinted in* 1958 U.S.C.C.A.N. 3576, 3577.  Subsection 1313(p) covers substitution of crude petroleum derivatives, and provides significant insight into Congressional intent regarding oil commingled in storage.  Senate Report No. 101-252 describes the analogous situation of jet fuel commingled in common storage facilities:

At most larger airports, jet fuel is handled through common storage facilities, usually operated by an independent service company, and refiners will have commercially interchangeable fuel commingled in these facilities.

S. REP. NO. 101-252 at 39 (1990), *reprinted in* 1990 U.S.C.C.A.N. 928, 966.[5]

Drawback is allowed "on exports of petroleum products stored in common storage when inventory records kept on a monthly basis demonstrate that the claimant has sufficient quantities of duty

---

[5]The Court recognizes that §1313(p) and its legislative history are dated 1990, while Marathon's claims were filed between 1987 and 1991.  The Court sees no reason why the legislative history of the after-enacted subsection should not be indicative of Congressional intent for the statute as a whole.  "[A] subsequent amendment and its legislative history, although not controlling, is nonetheless entitled to substantial weight in construing the earlier law." *May Dep't Stores Co. v. Smith*, 572 F. 2d 1275, 1278 (8th Cir. 1978) (citing *Glidden Co. v. Zdanok*, 370 U.S. 530, 541 (1962).   Subsection (p) did not replace a prior subsection or purport to fundamentally change the purpose of the drawback law, but merely added a provision for the substitution of finished petroleum derivatives.  This addition is consistent with the underlying purpose of the original statute: "to encourage the production of articles for export in the United States, thus increasing domestic manufactures, increasing foreign commerce and aiding American industry and labor." *Lockheed Petroleum Services, Ltd. v. United States*, 4 CIT 25, 28, 557 F. Supp. 583, 586 (1982) (citing *United States v. Int'l Paint Co., Inc.*, 35 CCPA 87, 90 (1948); *United States v. Nat'l Sugar Refining Co.*, 39 CCPA 96, 99 (1951)).  As such, the Court believes that the legislative history of subsection (p) is helpful in assessing whether Marathon's claims were eligible for drawback under §1313(b).

paid product in common storage to justify the drawback claim." *Id.* The report further defines common storage as "includ[ing] all articles of the same kind and quality stored in an area regardless of the number of bins, tanks, or other containers utilized." *Id.*

These statements demonstrate that Congress intended to permit drawback claims for oil kept in common storage. This section of legislative history pertains to "goods produced from crude petroleum or its derivatives," and hence applies to refined products commingled prior to export. The Court sees no reason that such obvious intent to permit drawback for commingled oil products awaiting export should not also apply to commingled crude oil *before* it is refined into those products. The legislative history indicates Congress' clear understanding of the business efficiency in commingling fuel in a common storage area, and its intent to conform drawback law to that reality. Therefore, the Court reasons that Congress intended no requirement that the actual molecules of oil be received by the importer, so long as the record keeping procedures are sufficient to protect against the possibility of multiple drawback claims on the same product. *See* 19 CFR §191.26(b) (1999) (detailing recordkeeping requirements for substitution manufacturing drawback claims).

Defendant claims that allowing commingling of imported crude oil will create the potential for abuse of the drawback laws. *Def.'s Mem.* at 10. Specifically, Defendant contends that because of the eight year period in which imported duty-paid merchandise may be used to produce the merchandise eligible for drawback and file a refund claim for duty paid on the product, and the large number of drawback claims that Customs handles annually,

> it is not feasible for Customs to trace the imported duty-paid merchandise designated on each claim to verify that merchandise entered on a particular import entry was not previously (or simultaneously) designated as the basis for a different claim.

*Id.* Additionally, Defendant claims that Marathon's documentation of its drawback claims indicate that Marathon did not withdraw oil from the LOOP facility in the same quantity as it was delivered into the facility. Because Marathon "presented only summary records applicable to its oil rather than the records on all receipts and withdrawals from the inventory," there is no way for Customs to verify that the petroleum crude imported was indeed used in the manufacture of refined petroleum products. *Id.* at 11.

The Court finds Defendant's claims to be irrelevant to the legal issue. As Plaintiff correctly notes, "no provision of the drawback statute allows drawback to be claimed more than once on designated imported merchandise, and plaintiff has made no such claims." *Pl.'s Reply Br. in Opp. to Def.'s Mem. in Support of its Cross-Mot. For Summ. J. and in Opp. to Pl.'s Mot. for Summ. J*. at 3 ("*Pl.'s Reply Br.*"). Moreover, Customs has presented no evidence that commingling of imported oil prevents Customs from safeguarding against abuse of the drawback laws, or that the Government is incapable of appropriately monitoring the drawback availability of duties paid. *Id.* As such, the Court sees no reason to question either Marathon's record keeping procedures or Customs' ability to monitor drawback claims as it decides the legal issue. The drawback statute does not require receipt of the actual imported oil molecules at Marathon's manufacturing facilities. However, in order to receive the drawback, Plaintiff must show that it has properly documented its drawback claims and supply all relevant information to Customs. Defendant is correct that there must be some method of documenting that an amount of crude petroleum imported through the LOOP facilities was used to claim drawback only once. It is not clear from the papers at Court whether sufficient documentation to that effect was submitted to Customs. A remand is therefore granted to reconsider Plaintiff's claims in light of this ruling.

### V. CONCLUSION

For the foregoing reasons, the Court holds that Customs erred in denying Marathon's

application for the drawback claims for LOOP-imported crude oil products.  Judgment for Plaintiff on

this issue will be entered accordingly.


Dated: _____                                              _____

        New York, NY                                              Judith M. Barzilay

                                                      Judge