**Slip Op. 00-115**

# UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                      :
                                      :
                                      :
DAL-TILE CORPORATION,                 :
                                      :
          Plaintiff,                  :
                                      :
     v.                               :     Court No. 95-11-01550
                                      :     BEFORE: CARMAN, CHIEF JUDGE
UNITED STATES,                        :
                                      :
          Defendant.                  :
                                      :
                                      :
_____:
```

Plaintiff, Dal-Tile Corporation (Dal-Tile), moves for summary judgment pursuant to U.S. CIT R. 56(a), contending it is entitled to judgment as a matter of law because under 19 U.S.C. § 1505 (1994), it is entitled to interest on eight million dollars of Customs duties deposited refunded to it by the United States Customs Service (Customs).

Defendant, United States, opposes plaintiff's motion and cross-moves for summary judgment pursuant to U.S. CIT R. 56(b), contending it is entitled to judgment as a matter of law because under 19 U.S.C. § 1505, plaintiff is entitled to interest on no more than the Customs duties deposited at entry on the nine representative entries reliquidated by Customs.

*Held*: The Court finds there are no genuine issues of material fact and summary judgment is appropriate. Plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied.

Date: September 1, 2000

*Ross & Hardies* (*Joseph S. Kaplan*), New York, New York, for plaintiff.

*David W. Ogden*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*James A. Curley*); *Edward N. Maurer*, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of Counsel, for defendant.

OPINION

**CARMAN, CHIEF JUDGE:** Plaintiff, Dal-Tile Corporation (Dal-Tile), moves for summary judgment pursuant to U.S. CIT R. 56(a), contending it is entitled to judgment as a matter of law because under 19 U.S.C. § 1505 (1994)[1], it is entitled to interest on eight million dollars of Customs duties deposited refunded to it by the United States Customs Service (Customs).

Defendant, United States, opposes plaintiff's motion and cross-moves for summary judgment pursuant to U.S. CIT R. 56(b), contending it is entitled to judgment as a matter of law because under 19 U.S.C. § 1505, plaintiff is entitled to interest on no more than the Customs duties deposited at entry on the nine representative entries reliquidated by Customs. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994).

BACKGROUND

---

[1] 19 U.S.C. § 1505 (1994) states, in relevant part:

(b) Collection or refund of duties, fees, and interest due upon liquidation or reliquidation

The Customs Service shall . . . refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation.

(c) Interest

Interest assessed due to an underpayment of duties, fees, or interest shall accrue, at a rate determined by the Secretary, from the date the importer of record is required to deposit estimated duties, fees, and interest to the date of liquidation or reliquidation of the applicable entry or reconciliation. Interest on excess moneys deposited shall accrue, at a rate determined by the Secretary, from the date the importer of record deposits estimated duties, fees, and interest . . . to the date of liquidation or reliquidation of the applicable entry or reconciliation.

Plaintiff, Dal-Tile, is an importer of wall and floor tile from Mexico. Between 1989 and 1993, plaintiff entered more than 10,000 entries of imported merchandise and deposited estimated regular customs duties on each entry. Plaintiff deposited approximately $25 million in Customs duties between 1989 and 1993.

Upon liquidation of merchandise entered in 1989 and 1991, plaintiff protested the classification of hundreds of entries of imported merchandise. In response, Customs entered into settlement discussions with plaintiff. A contract of settlement was reached on December 13, 1994, after Customs indicated to plaintiff's attorney, Steven P. Kersner, Esq., precisely what form plaintiff's offer of settlement should take. Plaintiff's attorney was provided a copy of an internal Customs memorandum entitled "Dal-Tile Corp. – Structuring Offer in Compromise" which specifically delineated the language and terminology to be used by plaintiff's attorney in any offer to compromise or settle. (*See* Plaintiff's Motion for Summary Judgment (PSJ), Ex. A *attached to* Kersner Aff.) Pursuant to Customs's memorandum, the final and agreed[2] upon contract of settlement provided:

> The U.S. Customs Service shall *grant* Dal-Tile's protests concerning [the protested] entries to the extent that Dal-Tile shall receive refunds of *Customs duties deposited* in the amount of $8.0 million. The remaining protests filed by Dal-Tile concerning these entries shall be denied.

(PSJ, Ex. B (emphasis added).) The contract of settlement was silent as to the method by which Customs was to pay Dal-Tile the eight million dollar refund in "Customs duties deposited" and as to the issue of interest.

---

[2] In accepting Dal-Tile's offer of settlement, defendant merely stated in a letter to Dal-Tile's attorney, "Please be advised that the U.S. Treasury accepts the offer in compromise from Dal-Tile Corporation on the terms stated in your letter of November 30 [1994]." (Plaintiff's Motion for Summary Judgment (PSJ), Ex. C.)

In order to pay plaintiff the amount due under the contract of settlement Customs utilized

a method whereby Customs chose to reliquidate "nine representative entries"[3] (Addendum to

Declaration of Ramona Q. McCarthy (Add. Decl. McCarthy) at 7,[4] *attached to* Defendant's Brief

in Opposition to Plaintiff's Motion for Summary Judgment and in Support of its Cross-Motion

for Summary Judgment (DSJ)), from the numerous entries for which protests were granted

pursuant to the contract of settlement.  So that the nine "representative" entries would yield the

eight million dollar refund upon reliquidation, Customs "modified [Customs's electronic

records] for the nine entries[5] . . . to enable the system to issue upon reliquidation of these entries

seven duty refund checks for $999,999, one for $900,000, and one for $100,007, for a total of $8

million, although these were not the amounts of duties [actually] deposited" on the nine

---

[3]  The Department of Treasury characterized the nine entries reliquidated by Customs as "representative" in an internal memorandum entitled  "Reliquidation of Representative Entries for Protest Numbers 2304-92-0199932 and 2304-94-100148 [the protests covering the liquidated entries subject to the contract of settlement]."  (Addendum to Declaration of Ramona Q. McCarthy (Add. Decl. McCarthy) at 7, *attached to* Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment and in Support of its Cross-Motion for Summary Judgment (DSJ)) The nine "representative" entries are Entry Nos.: 259-1877718-3; 259-1885939-5; 259-1886016-1; 259-1894767-9; 259-0019382-9; 259-0019431-4; 259-0020078-0; 259-0020336-2; and 259-0020430-3.

[4] The document cited is a memorandum dated December 22, 1994, to Sylvia Bird, a Supervisory Entry Officer, from Ramona McCarthy, a Field National Import Specialist.

[5] Prior to Customs modification of the electronic records for the nine "representative" entries, Customs's records indicated the following estimated regular Customs duties deposited on the respective entries:  $1,829.81 deposited on Entry No. 259-1877718-3; $2,056.62 deposited on Entry No. 259-1885939-5; $2,074.94 deposited on Entry No. 259-1886016-1; $1,617.85 deposited on Entry No. 259-1894767-9; $2,106.72 deposited on Entry No. 259-0019382-9; $1,660.16 deposited on Entry No. 259-0019431-4; $1,975.03 deposited on Entry No. 259-0020078-0; $2,958.02 deposited on Entry No. 259-0020336-2; and $1,900.38 deposited on Entry No. 259-0020430-3.  Prior to modification, the total amount deposited on the nine "representative" entries was $18,179.53.

"representative" entries.[6] (Declaration of Ramona Q. McCarthy (Decl. McCarthy) at ¶ 7,

*attached to* Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment and in

Support of its Cross-Motion for Summary Judgment.) The nine "representative" entries were

reliquidated on January 6, 1995.

On March 27, 1995, Dal-Tile timely filed a protest contesting Customs's failure to pay

interest on the duties refunded in connection with the nine reliquidated "representative" entries.

Dal-Tile alleged Customs was required to pay interest on Dal-Tile's refund pursuant to 19 U.S.C.

§ 1505, as amended by the Customs Modernization Act of 1993 (Mod Act) requiring the

payment of interest on refunds of excess duties deposited determined on liquidation or

reliquidation.[7] Despite this change in the law, Customs denied the plaintiff's protests.

In December 1995, plaintiff timely filed this action. Plaintiff alleged, "[b]y refusing to

pay interest on plaintiff's overpayment of duties deposited on the [nine (*see* Complaint at ¶ 2)]

subject entries, which were [re]liquidated after the enactment of the [Mod Act], Customs violated

19 U.S.C. § 1505." (Complaint at ¶ 5.) In its answer defendant denied violating 19 U.S.C.

---

[6] Customs represents the "entries were input for reliquidation on December 22, 1994, and were reliquidated on January 6, 1995." (Declaration of Ramona Q. McCarthy (Decl. McCarthy) at ¶ 7, *attached to* Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment and in Support of its Cross-Motion for Summary Judgment.) The Court notes in Dal-Tile's protest and complaint, Dal-Tile describes Customs's actions regarding the nine entries as a "liquidation," but in its motion for summary judgment, plaintiff describes Customs's actions as a "reliquidation." Defendant consistently refers to Customs's actions as a "reliquidation."

[7] In 1993, Congress enacted the Customs Modernization Act of 1993 (Mod Act) as part of the North American Free Trade Agreement Implementation Act. *See* Pub. L. No. 103-182, 107 Stat. 2057 (codified as amended in scattered sections of 19 U.S.C.). The changes provided by the Mod Act became effective on December 8, 1993. *See id.* at § 213, 107 Stat. 2057, 2099.

§ 1505.  (Answer at ¶ 5.)

In July 1997, this Court stayed all proceedings in this case until a final decision was made by the Federal Circuit regarding the Mod Act's application to protests filed prior to, but acted upon by Customs after, the Mod Act's effective date.[8]  In *Travenol Labs., Inc. v. United States*, 118 F.3d 749 (Fed. Cir. 1997), the Federal Circuit established a right to interest on all entries liquidated or reliquidated after the effective date of the Mod Act, regardless of whether the protests were filed prior to the Mod Act's effective date.  *See id*. at 754.  The Court vacated the stay in this matter in January of 1998.[9]  Plaintiff now moves and defendant cross-moves for summary judgment on the question of interest under 19 U.S.C. § 1505.

CONTENTIONS OF THE PARTIES

A.     *Plaintiff*

Plaintiff, Dal-Tile, contends no genuine issues of material fact exist, and it is entitled to judgment as a matter of law.  Dal-Tile argues there is no dispute between the parties regarding Customs's obligation under 19 U.S.C. § 1505(c) to pay interest on refunds resulting from entries reliquidated in January 1995.  According to Dal-Tile, "the sole issue remaining in dispute is the

---

[8] Both parties admit plaintiff's original protests were filed prior to the effective date of the Mod Act.  *See Dal-Tile Corp. v. United States*, 63 F. Supp. 2d 1341, 1345 n.7 (CIT 1999).  The parties further admit the contract of settlement was entered into and the refund took place after December 8, 1993, the effective date of the Mod Act.  *See id.*

[9] On March 19, 1999, defendant filed a motion for leave to file an amended answer and counterclaims.  On September 2, 1999, defendant's motion was denied.  *See Dal-Tile*, 63 F. Supp. 2d at 1350.  In its cross-motion for summary judgment defendant notes it has not waived or abandoned its rights to the various affirmative defenses it brought to the Court's attention in its previous motion.

principal sum upon which interest must be paid." (PSJ at 9.)  Dal-Tile submits by the plain meaning of the statute "interest must be paid on the actual amount of excess duties refunded, $8 million." (*Id.*)

Plaintiff contends the statute requires interest on "any excess monies refunded, not any excess monies deposited." (PSJ at 13 (emphasis omitted).)  Because the refund was effectuated through reliquidations occurring in 1995 and the amount of the refund was eight million dollars, plaintiff argues the principal sum upon which interest is owed is eight million dollars.  Dal-Tile contends the legislative history supports its understanding of the statute.[10]

Plaintiff argues defendant's interpretation of the statute, that Dal-Tile's entitlement to interest is "limited to the interest on what the refund would have been if Customs, in reliquidating the nine entries which it selected to effectuate the $8 million refund, had refunded only the difference in [actual] duty on those nine entries," (PSJ at 9) is unsupported and contrary to the plain meaning of the law.  Plaintiff asserts defendant's understanding of the statute would allow defendant to generate a "windfall for itself and to deprive plaintiff of substantial sums." (*Id.* at 12.)  Plaintiff contends Customs unilaterally chose to effectuate the eight million dollar refund by reliquidating nine entries rather than the many entries originally protested by plaintiff. Customs acted, according to plaintiff, purely for its own administrative convenience.  Plaintiff

_____

[10] While plaintiff cites to the *North American Free Trade Agreement Act*, JOINT REPORT OF CONGRESS, Pub. L. 103-189 § 642, at 90-91 (November 18, 1993), it appears plaintiff meant to cite either the *North American Free Trade Agreement Act*, S. REP. NO. 103-189, 103rd Cong., 1st Sess. 1993, § 642, at 210 (1993), or the *North American Free Trade Agreement Act*, H. R. REP. NO. 361(I), 103rd Cong., 1st Sess. 1993, § 642 at 327 (1993), *reprinted in*, 1993 U.S.C.C.A.N. 2552, 2690.  Both reports can support the basic propositions plaintiff asserts when citing to the JOINT REPORT.

argues Customs should not be allowed to avoid, through a "self-serving . . . process," (Plaintiff's Reply Memorandum in Support of Its Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion for Summary Judgment at 7) what it otherwise would have been required to pay if it had proceeded on an entry by entry reliquidation to reach the eight million dollar figure.

Finally, plaintiff contends defendant's arguments based on sovereign immunity are irrelevant. According to plaintiff, the statute clearly requires defendant to pay interest. When a statute requires the United States to pay interest, plaintiff argues, sovereign immunity is no defense.

Accordingly, plaintiff argues its motion for summary judgment should be granted.

B.     *Defendant*

Defendant cross-moves for summary judgment arguing there are no genuine issues of material fact in this matter. Defendant argues Customs is obligated to pay interest under section 1505, "only on $18,179.53, which is the amount of refunded estimated regular customs duty deposited by Dal-Tile on the nine entries that were reliquidated." (DSJ at 4-5.)

Based on the plain meaning of the statute, defendant argues, before Customs is required to pay interest on duties refunded upon reliquidation of an "applicable entry," estimated duties must have been deposited on that entry by the importer of record. Defendant asserts the accrual period outlined in section 1505(c) supports this reading of the statute because, under section

1505(c), the only "applicable entr[ies]" on which interest accrues are those on which estimated duties were deposited and which were liquidated or reliquidated. Payment of interest is not provided, according to defendant, on refunds where an entry is not liquidated or reliquidated or where no duties were deposited on an entry. Defendant contends only the nine entries enumerated in plaintiff's protest are "applicable entr[ies]" because they were the only entries reliquidated. The remaining entries Dal-Tile protested were not reliquidated, and thus those entries are not before the Court, and, they cannot be "applicable entr[ies]" within the meaning of section 1505(c).

Furthermore, while defendant does not contest plaintiff's understanding of Congress's intent, defendant contends the legislative history does not affect the Government's position.

Finally, defendant argues plaintiff's understanding of the statute is precluded by the Government's sovereign immunity. Citing to *Library of Congress v. Shaw*, 478 U.S. 310, 314, 318 (1986), defendant argues specific and express Congressional consent to an award of interest is required to permit an award of interest from the United States. Otherwise, the United States is immune from an interest award. Defendant contends this rule provides an added level of strictness to the general rule that waivers of sovereign immunity are construed strictly in favor of the sovereign. Defendant asserts Dal-Tile's arguments require a broad reading of the statute, in that plaintiff demands interest on excess moneys which were deposited on entries "that were not liquidated or reliquidated and are not before the Court." (DSJ at 13.) Because the express language of the statute does not unequivocally provide for interest on refunds of duties deposited on entries that were not liquidated or reliquidated, defendant argues, the principle of sovereign

immunity should be applied and the statute strictly construed in favor of the government. Thus, "the Government's sovereign immunity to an interest award is waived here only for interest on $18,179.53, which is the amount of the duty refund attributable to the nine entries at issue." (DSJ at 13.)

Accordingly, defendant argues its cross-motion for summary judgment should be granted.

STANDARD OF REVIEW

Before the Court are plaintiff's motion and defendant's cross-motion for summary judgment. Summary judgment is appropriate if, based on the papers before the Court, "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." U.S. CIT R. 56(c). The issues before the Court are ones of statutory construction, a question of law, and may be decided on summary judgment.[11] *See Marathon Oil Co. v. United States*, 93 F. Supp. 2d 1277, 1279-80 (CIT 2000). Because the Court finds there are no material questions of fact summary judgment is appropriate.

DISCUSSION

The legal issues before the Court pertain to whether Customs is obligated under 19 U.S.C. § 1505 to pay interest to plaintiff and, if so, the amount of principal upon which interest is owed.

---

[11] Since the question before the court is a legal one, the statutory presumption of correctness afforded Customs, *see* 28 U.S.C. § 2639(a)(1) (1994), carries no force. *See Marathon Oil Co. v. United States*, 93 F. Supp. 2d 1277, 1279 (CIT 2000).

In order to make its determination in this matter, the Court must first consider the language of the statute at issue. *Int'l Bus. Mach. Corp. v. United States*, 201 F.3d 1367, 1372 (Fed. Cir. 2000). If the Court finds the language "clear and unambiguous, then it controls, and we need not – indeed we may not – go further." *Id.* Section 1505 states, "The Customs Service shall . . . refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation" and further, "Interest on excess moneys deposited shall accrue . . . from the date the importer . . . deposits estimated duties, fees, and interest . . . ." 19 U.S.C. § 1505(b) and (c).

The Court finds the language of section 1505(b) plain and unambiguous. It is clear in order for Customs to be liable for interest, a refund must be "determined on a liquidation or reliquidation." Indeed, under the statute it is a liquidation or reliquidation which triggers interest liability. The Court notes this understanding of section 1505(b) is supported by the United States Court of Appeals for the Federal Circuit. *See Travenol*, 118 F.3d at 753 n.5 (stating the "event that gives rise to interest liability is liquidation or reliquidation"); *Novacor Chem. Inc. v. United States*, 171 F.3d 1376, 1382 (Fed. Cir. 1999) (reliquidation "is the triggering event in a dispute surrounding an award of interest"). Also, the Court notes defendant does not appear to disagree with this Court's interpretation of the statute. (DSJ at 7 (stating section 1505 (b) require[s] the refund be "'determined on a liquidation or a reliquidation,'" *see* 19 U.S.C. § 1505 (b), and citing *Travenol*, 118 F.3d at 753).)

In this case, as a result of the contract of settlement between Dal-Tile and government, Customs granted Dal-Tile's protests to the extent of refunding it eight million dollars. On December 22, 1993, Customs chose to reliquidate nine "representative" entries from those

subject to the contract of settlement as the means by which Customs would refund the eight

million dollars to plaintiff. After modifying the computer records for the nine "representative"

entries, Customs reliquidated the nine "representative" entries on January 6, 1994, and refunded

eight million dollars to Dal-Tile.

Based on the plain meaning of the statute, the Court finds Customs liable to plaintiff for

interest under 19 U.S.C. § 1505. On reliquidation of the nine modified "representative" entries,

Customs determined[12] to refund eight million dollars to Dal-Tile. Therefore, Customs is liable

for interest under the statute.

As to the amount of principal upon which interest is owed, the plain language of section

1505(b) states interest shall be paid on a "refund [of] any excess moneys deposited" as

determined on reliquidation. In this case, plaintiff argues the amount of "excess moneys

deposited" upon which Customs owes interest is eight million dollars, and defendant argues the

amount of "excess moneys deposited" upon which it owes interest is only $18,179.53, the

amount of duties originally deposited on the nine "representative" reliquidated entries. Customs

---

[12] The Court notes the fact Customs was bound to the eight million dollar figure by entering into the contract of settlement is not relevant as to whether the determination to refund excess moneys deposited was made on reliquidation. The contract of settlement obligated Customs to grant Dal-Tile's protests to the extent of refunding it eight million dollars, and Customs chose to effectuate the grant by reliquidation. Because all decisions and findings by Customs are merged in and become part of the liquidation or reliquidation against which a protest will lie, *see United States v. Utex Int'l, Inc.*, 857 F.2d 1408, 1410 (Fed. Cir. 1988) (citations omitted); *Commonwealth Oil Refining Co., Inc. v. United States*, 332 F. Supp. 203, 209 (Cust. Ct. 1971); *Dow Chemical Co. v. United States*, 10 CIT 550, 557, 647 F. Supp. 1574,1581 (1986) (quoting *United States v. B. Holman, Inc.*, 29 CCPA 3, 14 (1941)), Customs's decision to grant Dal-Tile's protest and refund it eight million dollars became part of its determinations on reliquidation regarding the amount of excess moneys deposited. *Cf. Travenol*, 118 F.3d at 753 (reliquidation is when Customs "determine[s] whether there has been an overpayment or underpayment" of duties deposited).

maintains the balance of the eight million dollars refunded to Dal-Tile does not constitute "excess moneys deposited" under section 1505(b) because it was deposited on entries that were not reliquidated.

First, the Court notes the parties appear to agree the eight million dollars refunded upon reliquidation to Dal-Tile constitutes excess moneys deposited on those entries for which Customs granted protests under the contract of settlement. The contract of settlement describes the eight million dollars to be refunded on the grant of Dal-Tile's protest as "Customs duties deposited." (PSJ, Ex. B.) Also, in papers submitted to this Court, the parties characterize the eight million dollars as excess moneys deposited. (*See* PSJ at 4 (describing the eight million dollars as "refunded excess duties"); DSJ at 8 (admitting the entirety of the refund, totaling eight million dollars, consisted of "excess moneys deposited"); Defendant's Response to Plaintiff's Statement of Material Facts Not In Dispute at ¶ 5 (admitting "defendant refunded $8 million in excess estimated regular customs duties to the plaintiff")．) Therefore, the Court finds the eight million dollars refunded to Dal-Tile to be excess moneys deposited.

Defendant argues, however, the entire eight million dollars may not be considered "excess moneys deposited" under 19 U.S.C. § 1505(b) because the entirety of the eight million was not reliquidated as required by the statute. This Court disagrees with defendant's argument.

The Court notes the language of the contract of settlement is unequivocal. Customs agreed to "grant Dal-Tile's protests . . . to the extent that Dal-Tile shall receive refunds of Customs duties deposited in the amount of $8.0 million." (PSJ, Ex. B.) While the Court recognizes the method by which Customs would generate the refund owed Dal-Tile was not

specified in the contract of settlement, the Court notes the "grant" of a Customs protest triggers certain administrative action under the Customs statute and regulations. Pursuant to 19 U.S.C. § 1515(a) (1994): "[T]he appropriate customs officer, within two years from the date a protest was filed in accordance with 1514 of this title, shall review the protest and shall allow or deny such protest in whole or in part. Thereafter, any duties, charge, or exaction found to have been assessed or collected in excess shall be . . . refunded . . . ." Also, 19 C.F.R. § 174.29 (1994) requires, "[i]f a protest is allowed in whole or in part the district director shall remit or refund any duties . . . found to have been collected in excess . . . ." While the Court does not find any statutory or regulatory mandate for reliquidation if duties are to be refunded, the Court notes Customs jurisprudence tends to acknowledge "[t]he administrative mechanism for refunding duties is reliquidation of the entry." NEVILLE, PETERSON & WILLIAMS, CUSTOMS LAW & ADMINISTRATION § 9.3 (3d. ed. 1999). Therefore, any grant by Customs of Dal-Tile's protests arguably necessitated and, indeed, contemplated reliquidation of the numerous entries for which protests were granted.

The Court finds it clear that, in lieu of generating the refund owed Dal-Tile under the settlement agreement through an entry by entry reliquidation, Customs chose to reliquidate nine "representative" entries. Customs "modified" nine entries from those at issue in the contract of settlement to be "representative" of *all* those entries subject to Customs's grant of protest. The memorandum from Ramona Q. McCarthy to Sylvia Bird stated, in relevant part:

> We have been directed by the Department of the Treasury through Service Headquarters Office of Trade Operations to refund by December 31, 1994 Customs duties associated with the protested entries covered by the two subject protests. The total amount to be refunded equals $8,000,000. The instructions further indicate that we are to refund this amount either in a lump sum or in some other manner than on an entry by entry basis.

(Addendum to D McCarthy at 7.)  Ms. McCarthy further declared:

> It was not possible to reliquidate a large number of entries within the time frame that was given [by the contract of settlement], and, with respect to considering making a lump sum payment, Customs' computer system prevents the refund of more money on an entry than was recorded as collected.  Also, Customs cannot issue single duty refund checks for more than $999,999.  Therefore, to effectuate the refund, other Customs personnel modified the [] records for the nine entries in this case to enable the system to issue upon reliquidation of these entries . . . a total of $8 million, although these were not the amounts of duties deposited . . . [*see supra* note 5].

(D McCarthy at ¶ 7.)  In undertaking this method of refund, it is apparent Customs wholly disregarded the actual Customs duties deposited on the nine "representative" entries and utilized deposit figures for the nine "representative" entries which could result, upon reliquidation, in an eight million dollar refund.  For example, Customs maintains only $2,106.72 was deposited on Entry No. 259-0019382-9; however, Customs's reliquidation worksheet indicates $999,999 was recorded deposited on the same entry and a refund check for $999,999 was issued to plaintiff on the same entry.   By defendant's own admission, *i.e.*, "Customs' computer system prevents the refund of more money on an entry than was recorded as collected," it could not have generated the refund amount required given the deposits made on the nine "representative" entries at entry, *i.e.*, $18,179.53.

Defendant's argument that it is only liable for interest on those moneys actually deposited at entry on the nine "representative" reliquidated entries is unsupported by the undisputed facts evident in the documentation brought forth by defendant.  Clearly, Customs considered there to be adequate moneys deposited on the nine "representative" entries to result in Dal-Tile's eight million dollar refund.  Defendant's argument asks this Court to accept a mathematical impossibility, *i.e.*, that upon reliquidation $18,179.53 could yield an eight million dollar refund.  This Court is unwilling to accept and endorse such an impossibility.  This Court finds no reason for it to consider the nine "representative" entries, for the purpose of calculating interest, in a

manner different from the manner in which Customs considered the nine "representative" entries for the purposes of reliquidation and refund, *i.e.*, as having excess moneys deposited in an amount to yield an eight million dollar refund.

Therefore, for the reasons stated above, this Court concludes, pursuant to 19 U.S.C. § 1505, *Travenol*, 118 F.3d at 749, and the undisputed facts, Dal Tile is entitled to receive interest on the refund of eight million dollars of excess moneys deposited in the manner required by law.

CONCLUSION

For the reasons stated above, the Court concludes plaintiff is entitled to interest pursuant to 19 U.S.C. § 1505. Accordingly, plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied.

_____
Gregory W. Carman
Chief Judge

Dated: September 1, 2000
      New York, New York